# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MISC. NO.:

SECURITIES AND EXCHANGE
COMMISSION,

      Applicant,

v.

BRANDON CHARNAS,

      Respondent.

_____/

**DECLARATION OF MICHAEL J. GONZALEZ IN SUPPORT OF
SECURITIES AND EXCHANGE COMMISSION'S APPLICATION
FOR AN ORDER TO SHOW CAUSE AND FOR AN ORDER REQUIRING
COMPLIANCE WITH ADMINISTRATIVE SUBPOENAS**

MICHAEL J. GONZALEZ, pursuant to 28 U.S.C. §1746, declares as follows:

1.      I am an attorney in the Miami Regional Office of the U.S. Securities and

Exchange Commission, located at 801 Brickell Avenue, Suite 1950, Miami, Florida 33131.  I am

over twenty-one years of age and have personal knowledge of the matters set forth herein.  This

declaration is submitted in support of the SEC's Application for an Order to Show Cause and for

an Order Requiring Compliance with Administrative Subpoenas against Brandon Charnas.

      **A.  The Commission's Investigation**

2.      The Commission has been investigating potential insider trading in the securities

of The ODP Corporation (**"ODP"**) d/b/a Office Depot, a Delaware corporation headquartered in

Boca Raton, Florida (**"Investigation"**).  [Ex. 1].  ODP's common stock is registered with the

Commission pursuant to Section 12(b) of the Securities Exchange Act of 1934 (**"Exchange Act"**).

[Ex. 2].  ODP's common stock trades on the NASDAQ under the symbol ODP and its options

1

trade on the Chicago Board Options Exchange, Boston Options Exchange, New York Stock Exchange Arca[1] and the International Securities Exchange.  [Ex. 3].

3.      The Commission has issued a Formal Order Directing Private Investigation and Designating Officers to Take Testimony (**"Formal Order"**) in the Matter of Trading in the Securities of The ODP Corporation, FL-4276. [Ex. 1].

4.      Under the Formal Order, members of the Commission's staff are officers of the Commission empowered to administer oaths, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records deemed relevant or material to the investigation.  [*Id*.].  All authorized staff are employed at the Miami Regional Office of the SEC.  [*Id.*].

5.      The Formal Order directs the Commission's staff to conduct a private investigation to determine whether persons or entities have engaged in the enumerated potential violations of the antifraud provisions of the federal securities laws, specifically, violations of Section 17(a) of the Securities Act of 1933 (**"Securities Act"**) and Section 10(b) of the Securities Exchange Act of 1934 (**"Exchange Act"**) and Rule 10b-5 thereunder (collectively the **"anti-fraud provisions"**). [*Id.*].  The Investigation focuses on whether, in violation of the anti-fraud provisions of the federal securities laws and invocation of the federal courts' jurisdiction of these provisions, persons or entities may have traded in the securities of ODP on the basis of material nonpublic information, or disclosed to others material nonpublic information regarding

---

[1] The New York Stock Exchange (**"NYSE"**) Arca was formed in 2006 after the NYSE acquired Archipelago, an electronic exchange network.  NYSE Arca differs from the NYSE in that the NYSE is a physical and electronic stock exchange, while NYSE Arca is an electronic communications network used for matching orders.

ODP in breach of a fiduciary duty or other duty arising out of a relationship of trust and confidence. [*Id.*]

### B. The Commission's Reason for its Investigation

6.    The Commission has information that tends to show that from at least August 4, 2020, individuals and/or entities may have violated the anti-fraud provisions of the federal securities laws based on insider trading in the securities of ODP.  [*Id.*].

7.    On December 14, 2020, Charnas began trading in ODP by purchasing 2,100 shares through his Robinhood Securities, LLC ("Robinhood") account, which he had opened in March of 2020.  [Ex.4 p.37].  He continued to purchase securities in ODP through December 31, 2020.  [*Id.*].

8.    On Monday, January 11, 2021, USR Parent, Inc. d/b/a Staples (**"Staples"**) publicly announced, before the NASDAQ market opened that day, that it had sent a letter to ODP proposing to acquire ODP for $40 per share in cash (**"Staples' Acquisition Offer"**). [Ex.5].  ODP's stock price had closed at $36.96 on the previous Friday, January 8, 2021.  [Ex.6].

9.    Throughout mid-December 2020 and through the date of the Staples' Acquisition Offer, Charnas purchased ODP stock and options while communicating frequently with multiple other individuals who traded ODP options and/or common stock via text message, iMessage, and/or WhatsApp, (**"Cell phone Messages"**)[2] as well as emails and telephone calls.  The timing of Charnas' trading and communications activity with other traders ramped up in advance of the Staples' Acquisition Offer, specifically the last two weeks of December 2020 when Staples was

---

[2] "Text messages" are standard SMS/MMS messages; iMessages are messages sent to and from Apple's own instant messaging service; and WhatsApp is a popular cell phone messaging service owned by Meta Platforms, Inc., (formerly named Facebook, Inc.).

preparing to publicly approach ODP with an offer in the coming weeks, but had not made a public announcement.

10.     The staff's investigation has uncovered that Charnas' trading activity not only coincided with frequent communications with other traders who made significant profits by purchasing ODP options and common stock just prior to the Staples' Acquisition Offer, but at times, Charnas traded while meeting with them in person to discuss ODP.  By way of example, on December 23, 2020, information obtained by the staff shows that Charnas communicated via Cell phone Message with Trader 1, who Charnas invited to a 1:00 p.m. lunch that day with him and also Trader 2 to discuss ODP in Miami, FL.  [Ex.7].  In addition, Charnas' business, Current Real Estate Advisors, is located in Miami, FL. [Ex. 11].

   **C. Charnas' use of his Cell Phone to Communicate with Similarly Situated ODP
      Traders.**

11.     Through its investigation, the Commission's staff has obtained certain Cell phone Messages where Charnas communicated and discussed trades in ODP securities with other traders who traded in and profited from the sale of ODP securities.  Charnas met and repeatedly communicated via Cell phone Message with Traders, including Traders 1, 2, and 3.  For example, Charnas connected and introduced Traders 2 & 3 on December 22, 2023, specifically focusing their attention on ODP and another investment.  [Ex. 8].  Later, on February 23, 2021, Charnas shared a screenshot of his Robinhood trading account with several traders the staff has identified in its investigation who participated in suspicious trading of ODP equities and options, where Charnas shared the price of ODP on February 23, 2021 reflecting ODP's appreciation in value since initial discussions with fellow traders began the previous year.  [Ex. *Id*].

12.     Yet, while the staff has received certain Cell phones Messages from certain individuals during the course of its investigation, the staff has a good-faith reason to believe, through its investigation, that Charnas possesses additional Cell phone Messages that are not in the staff's possession.  This belief includes possession of telephone call logs indicating frequent conversations between Charnas and other individuals who traded in ODP securities in similarly suspicious trades as Charnas, including at key moments leading to Staples' Acquisition Offer and thereafter. Further, in a recent sworn testimony, Trader 6 indicated that Charnas was well aware of the staff's Subpoena and that Charnas told him he was compiling responsive Communications, including from his cell phone as well as email account, in response to the Subpoena [Ex. 9].

13.     Obtaining communications between potential tippers and tippees are critical to determine whether material nonpublic information was disseminated between individuals, which in turn give them an unfair advantage in the market and inured to their financial benefit.

**D.  The Commission's Subpoena, Meet and Conferral, and Respondent's Continued Failure to Comply**

   **i. *The Subpoena to Respondent***

14.     As part of the Investigation and pursuant to the Formal Order, on November 3, 2022, the Commission issued a preservation letter and the Subpoena to Charnas.  It required the production of the requested documents, itemized numbers 1 through 9, by November 24, 2022. [Ex. 10].  The relevant time period of the Subpoena for responsive information was August 1, 2020 through November 3, 2022 (**"Relevant Period"**).  [*Id.*].   The Subpoena requested items 1 through 9, which were:

   1. Documents sufficient to identify the Charnas Accounts;

   2. All account statements for all brokerage accounts (includes any account in which any trading of securities occurred) identified in Request #1, above;

3. All Documents (including, but not limited to, correspondence, e-mails and notes of conversations) Concerning Communications between you and any Person Concerning "ODP" or "Office Depot";

4. All Communications with any brokerage at which you had an account in Request # 2.

5. All Documents Concerning trading in the securities of ODP;

6. All credit card statements for credit cards that were or are in your name, and/or over which you have direct or indirect control;

7. Documents sufficient to disclose all telephone numbers and calling card numbers in your name or which you regularly used during the Relevant Period, including, but not limited to, all telephone numbers at your residences (regardless of whose names they are listed under), all cell phone and facsimile numbers, and all work-related telephone numbers used by you;

8. Documents sufficient to identify all e-mail, text messaging and instant messaging accounts you used, controlled, managed, maintained or opened at any time during the Relevant Period;

9. All telephone bills and statements for all phone numbers identified in Request # 8 above.

Included in the definitions section of the Subpoena were the following definitions:

1. "ODP Corporation" means the entity doing business under the name "ODP" a/k/a "Office Depot" including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

6. "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, facsimiles, messages of any type, telephone messages, text messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

7. "Communication" means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

[*Id.*].  The Subpoena also required Charnas to appear before officers of the Commission via video teleconference on WebEx for sworn testimony on November 17, 2022 at 9:30 a.m. [*Id.*].

### ii. *Meet and Conferral*

15.     The subpoena was issued on November 3, 2022 and was delivered to Charnas on November 9, 2022.Charnas's counsel contacted the staff on November 16, 2022, indicating he had been retained and requested an adjournment of the testimony so he could assess the Subpoena.

16.     On January 24, 2023, Commission staff inquired of Charnas's counsel as to the status of Charnas's expected production. Counsel responded the following day saying that he needed until the following week to get back to the staff to discuss Charnas's Subpoena response. The staff once again provided an extension and Charnas's counsel agreed to contact the staff on January 31, 2023.

17.     Having not heard from Charnas's counsel and extending him additional professional courtesies, the staff again reached out on February 3, 2023 to inquire as to the status of the response to the Subpoena.

18.     The staff then spoke to Charnas's counsel on February 6, 2023 whereupon counsel informed that Charnas would be invoking his Fifth Amendment rights as to sworn testimony when it occurs and as well in response to any (and all) documents and communications called on to be produced pursuant to the Subpoena.  Charnas's counsel did not thereafter provide a formal written affirmation of his verbal assertions.

19.    On April 17, 2023, the staff requested that Charnas's counsel provide a formal response to the Subpoena and requested a privilege log be produced.  Later that same day on April 17, 2023, Charnas's counsel reiterated via email that his client would be invoking his Fifth Amendment rights regarding any response to the November 3, 2022 Subpoena.

20.    The staff responded to Charnas's counsel on April 19, 2023, and explained that Charnas's written communications related to ODP contained within his cell phone were not subject to constitutional protection because staff is aware of the existence of those communications with reasonable particularity and the location of the communications— Charnas's cell phone.  The staff made it abundantly clear that, without waiving any rights, it only sought Charnas's cell phone communications relating to ODP during the Relevant Period.

21.    Nonetheless, in an abundance of caution, and for the avoidance of doubt, and in light of the potential expansive definitions of "Documents" and "Communications" in the Subpoena, the staff amended Request No. 3 as follows:

3. [Provide] all text messages, iMessages, and WhatsApp messages (collectively **"Cell phone Messages"**) between You and any Person Concerning "ODP" or "Office Depot." ("**Revised Subpoena Request No. 3"**)

### iii. Continued Refusal to Comply with Subpoena

22.    In late April and early May 2023, the parties exchanged email communications asserting their positions.  This exchange was followed by a meet and confer telephone call on May 1, 2023 in a final attempt to resolve the disagreement.  A resolution could not be reached.  Counsel continues to assert the Fifth Amendment on behalf of Charnas with respect to Revised Subpoena Request No. 3.

23.     Given the staff's knowledge, with reasonable particularly, of the existence of some of these communications Charnas had during the Relevant Period with other ODP traders via Cell phone Messages, the Commission thus seeks Court intervention to obtain them from Charnas.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 24th day of July, 2023, in Miami, Florida.

MICHAEL
GONZALEZ

Digitally signed by MICHAEL
GONZALEZ
Date: 2023.07.24 10:33:10 -04'00'

Michael J. Gonzalez
Senior Counsel

# EXHIBIT 1

# NON-PUBLIC

**UNITED STATES OF AMERICA**
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**

**October 19, 2021**

| |
|---|
| In the Matter of |
| |
| **Trading in Securities of** |
| **The ODP Corporation,** |
| |
| **FL-04276** |

**ORDER DIRECTING PRIVATE INVESTIGATION AND DESIGNATING OFFICERS TO TAKE TESTIMONY**

I.

The Commission's public official files disclose that:

A.      The ODP Corporation ("ODP") is a Delaware corporation headquartered in Boca Raton, FL. ODP's common stock is registered with the Commission pursuant to Section 12(g) of the Securities Exchange Act of 1934 ("Exchange Act"). ODP's common stock trades on the NASDAQ under the symbol ODP and its options trade on the Chicago Board Options Exchange, Boston Options Exchange, NYSE Arca, and International Securities Exchange (ISE). ODP files periodic reports, including Forms 10-K and 10-Q, with the Commission pursuant to Section 13(a) or Section 15(d) of the Exchange Act and related rules thereunder.

II.

The Commission has information that tends to show that from at least August 4, 2020:

A.      In possible violation of Section 17(a) of the Securities Act of 1933 ("Securities Act"), ODP, its officers, directors, employees, partners, subsidiaries, and/or affiliates and/or other persons or entities, directly or indirectly, in the offer or sale of certain securities, may have been employing devices, schemes, or artifices to defraud, obtaining money or property by means of untrue statements of material fact or omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were or are made, not misleading, or engaging in transactions, practices or courses of business which operated, operate, or would operate as a fraud or deceit upon the purchaser. As part of or in connection with these activities, such persons or entities, directly or indirectly, may have been, among other things,

trading in the securities of ODP on the basis of material nonpublic information, or disclosing to others material nonpublic information regarding ODP in breach of a fiduciary or other duty arising out of a relationship of trust and confidence. While engaged in the above-described activities, such persons or entities, directly or indirectly, may have been using any means or instruments of transportation or communication in interstate commerce or using the mails.

B.      In possible violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, ODP its officers, directors, employees, partners, subsidiaries, and/or affiliates and/or other persons or entities, directly or indirectly, in connection with the purchase or sale of certain securities, may have been employing devices, schemes, or artifices to defraud, making untrue statements of material fact or omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were or are made, not misleading, or engaging in acts, practices or courses of business which operated, operate, or would operate as a fraud or deceit upon any person. In connection with these activities, such persons or entities, directly or indirectly, may have been, among other things, trading in the securities of ODP on the basis of material nonpublic information, or disclosing to others material nonpublic information regarding ODP in breach of a fiduciary or other duty arising out of a relationship of trust and confidence. While engaged in the above-described activities, such persons or entities, directly or indirectly, may have been making use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange.

III.

The Commission, deeming such acts and practices, if true, to be possible violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, finds it necessary and appropriate and hereby:

ORDERS, pursuant to the provisions of Section 20(a) of the Securities Act and Section 21(a) of the Exchange Act that a private investigation be made to determine whether any persons or entities have engaged in, or are about to engage in, any of the reported acts or practices or any acts or practices of similar purport or object; and

FURTHER ORDERS, pursuant to the provisions of Section 19(c) of the Securities Act, Section 21(b) of the Exchange Act that for purposes of such investigation,



and each of them, are hereby designated as officers of the Commission and are empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require

2

the production of any books, papers, correspondence, memoranda, or other records deemed relevant or material to the inquiry, and to perform all other duties in connection therewith as prescribed by law.

For the Commission, by the Division of Enforcement, pursuant to delegated authority.[1]

Vanessa A. Countryman
Secretary

By: Jill M. Peterson
        Assistant Secretary

---

[1]  17 CFR 200.30-4(a)(13)

# EXHIBIT 2

U.S. Securities and Exchange Commission

# Filing Detail

***Form 10-K** - Annual report [Section 13 and 15(d), not S-K Item 405]:*

**SEC Accession No.** 0001564590-22-006232

**Filing Date**
2022-02-23
**Accepted**
2022-02-23 16:03:46
**Documents**
140

**Period of Report**
2021-12-25

Interactive Data

Document Format Files

| Seq | Description | Document | Type | Size |
|---|---|---|---|---|
| 1 | 10-K | odp-10k_20211225.htm iXBRL | 10-K | 6735037 |
| 2 | EX-4.2 | odp-ex42_10.htm | EX-4.2 | 32303 |
| 3 | EX-10.12 | odp-ex1012_38.htm | EX-10.12 | 14142 |
| 4 | EX-10.30 | odp-ex1030_41.htm | EX-10.30 | 1011368 |
| 5 | EX-21 | odp-ex21_9.htm | EX-21 | 67613 |
| 6 | EX-23.1 | odp-ex231_7.htm | EX-23.1 | 2948 |
| 7 | EX-31.1 | odp-ex311_11.htm | EX-31.1 | 13156 |
| 8 | EX-31.2 | odp-ex312_6.htm | EX-31.2 | 13164 |
| 9 | EX-32.1 | odp-ex321_8.htm | EX-32.1 | 10049 |
| 10 | GRAPHIC | gnlsnvjbyre5000002.jpg | GRAPHIC | 19239 |
| 11 | GRAPHIC | gnlsnvjbyre5000001.jpg | GRAPHIC | 10767 |
| | Complete submission text file | 0001564590-22-006232.txt | | 31920690 |

Data Files

| Seq | Description | Document | Type | Size |
|---|---|---|---|---|
| 12 | XBRL TAXONOMY EXTENSION SCHEMA | odp-20211225.xsd | EX-101.SCH | 121473 |
| 13 | XBRL TAXONOMY EXTENSION CALCULATION LINKBASE | odp-20211225_cal.xml | EX-101.CAL | 148828 |
| 14 | XBRL TAXONOMY EXTENSION DEFINITION LINKBASE | odp-20211225_def.xml | EX-101.DEF | 538856 |
| 15 | XBRL TAXONOMY EXTENSION LABEL LINKBASE | odp-20211225_lab.xml | EX-101.LAB | 938648 |
| 16 | XBRL TAXONOMY EXTENSION PRESENTATION LINKBASE | odp-20211225_pre.xml | EX-101.PRE | 889205 |
| 134 | **EXTRACTED** XBRL INSTANCE DOCUMENT | odp-10k_20211225_htm.xml | XML | 8548201 |

**ODP Corp (Filer) CIK: 0000800240 (see all company filings)**

IRS No.: **851457062** | State of Incorp.: **DE** | Fiscal Year End: **1228**
Type: **10-K** | Act: **34** | File No.: **001-10948** | Film No.: **22663408**

Business Address
*6600 NORTH MILITARY TRAIL*

Mailing Address
*6600 NORTH MILITARY TRAIL*

SIC: **5940** Retail-Miscellaneous Shopping Goods Stores                    *BOCA RATON FL 33496  BOCA RATON FL 33496*
Office of Trade & Services                                                  *561-438-4800*

EX-4.2 2 odp-ex42_10.htm EX-4.2

**Exhibit 4.2**

<div align="center">

**DESCRIPTION OF REGISTRANT'S SECURITIES**
**REGISTERED PURSUANT TO SECTION 12 OF THE**
**SECURITIES EXCHANGE ACT OF 1934**

</div>

The ODP Corporation ("ODP," "we," "our," or "us") has two classes of securities registered under Section 12 of the Securities Exchange Act of 1934, as amended: our common stock, par value $0.01 per share (our "Common Stock"), and our preferred share purchase rights (our "Preferred Rights").

The following description of our Common Stock is based upon our Amended and Restated Certificate of Incorporation (our "Charter"), our Amended and Restated Bylaws (our "Bylaws"), our Certificate of Designations of Series A Junior Participating Preferred Stock (our "Certificate of Designations), and applicable provisions of the Delaware General Corporation Law (the "DGCL"). The description does not purport to be complete and is subject to, and qualified in its entirety by express reference to, our Charter, our Bylaws, and our Certificate of Designations, each of which is incorporated by reference as an exhibit to the Annual Report on Form 10-K of which this exhibit is a part, and to the applicable provisions of the DGCL. We encourage you to read our Charter, our Bylaws, our Certificate of Designations and the applicable provisions of the DGCL for additional information.

Under our Charter, our authorized capital stock consists of 80,000,000 shares of Common Stock, and 1,000,000 shares of Preferred Stock, par value $0.01 per share (our "Preferred Stock"). The outstanding shares of our Common Stock are duly authorized, validly issued, fully paid and nonassessable.

<div align="center">

**DESCRIPTION OF COMMON STOCK**

</div>

**Listing**

Our Common Stock is listed and principally traded on the Nasdaq Global Select Market under the ticker symbol "ODP."

**Voting Rights**

Each holder of our Common Stock is entitled to one vote for each share held by such holder on all matters voted upon by our stockholders.

**Dividend Rights**

The holders of our Common Stock are entitled to receive dividends when, as, and if declared by our board of directors out of funds legally available therefor, subject to the rights of any then outstanding shares of Preferred Stock.

**Liquidation Rights**

Subject to the rights of any then outstanding shares of Preferred Stock, in the event of a liquidation, dissolution or winding up of ODP, the holders of our Common Stock will be entitled to receive, after payment or provision for payment of all of its debts and liabilities, all of the assets of ODP legally available for distribution to stockholders.

**Special Meeting of Stockholders**

Our Bylaws vest the power to call special meetings of stockholders in the Chief Executive Officer, board of directors, or stockholders holding shares representing not less than 25% of our outstanding Common Stock entitled to vote on the matter or matters to be brought before the meeting. Stockholders are permitted under the Bylaws to act by written consent in lieu of a meeting.

**Preemptive and Other Rights**

Holders of our Common Stock are not entitled to preemptive rights with respect to any shares which may be issued, and there are no conversion rights or redemption, purchase, retirement or sinking fund provisions with respect to our Common Stock.

**Transfer Agent and Registrar**

The transfer agent and registrar for our Common Stock is Computershare Shareowner Services LLC.

**Series A Junior Participating Preferred Stock**

Of our 1,000,000 shares of authorized Preferred Stock, our board of directors has designated 80,000 shares as "Series A Junior Participating Preferred Shares".

*Dividends.* Subject to the rights of the holders of any shares of any series of Preferred Stock (or any similar stock) ranking prior and superior to the Series A Preferred Stock with respect to dividends, the holders of Preferred Shares, in preference to the holders of our Common Stock and of any other junior stock, shall be entitled to receive, when, as and if declared by our board of directors out of funds legally available for the purpose, quarterly dividends payable in cash on the first day of March, June, September and December in each year (each such date, a "Quarterly Dividend Payment Date"), commencing on the first Quarterly Dividend Payment Date after the first issuance of a Preferred Share or fraction of a Preferred Share, in an amount per share (rounded to the nearest cent) equal to the greater of (a) $1.00 or (b) subject to the provision for adjustment discussed below, 1,000 times the aggregate per share amount of all cash dividends, and 1,000 times the aggregate per share amount (payable in kind) of all non-cash dividends or other distributions, other than a dividend payable in shares of our Common Stock or a subdivision of the outstanding shares of our Common Stock (by reclassification or otherwise), declared on our Common Stock since the immediately preceding Quarterly Dividend Payment Date or, with respect to the first Quarterly Dividend Payment Date, since the first issuance of any Preferred Share or fraction of a Preferred Share. In the event ODP shall at any time declare or pay any dividend on our Common Stock payable in shares of our Common Stock, or effect a subdivision or combination or consolidation of the outstanding shares of our Common Stock (by reclassification or otherwise than by payment of a dividend in shares of our Common Stock) into a greater or lesser number of shares of our Common Stock, then in each such case the amount to which holders of Preferred Shares were entitled immediately prior to such event under clause (b) of the preceding sentence shall be adjusted by multiplying such amount by a fraction, the numerator of which is the number of shares of our Common Stock outstanding immediately after such event and the denominator of which is the number of shares of our Common Stock that were outstanding immediately prior to such event.

ODP shall declare a dividend or distribution on the Series A Preferred Stock as discussed in the above paragraph immediately after it declares a dividend or distribution on our Common Stock (other than a dividend payable in shares of our Common Stock); provided that, in the event no dividend or distribution shall have been declared on our Common Stock during the period between any Quarterly Dividend Payment Date and the next subsequent Quarterly Dividend Payment Date, a dividend of $1.00 per share on the Series A Preferred Stock shall nevertheless be payable on such subsequent Quarterly Dividend Payment Date.

2

Dividends shall begin to accrue and be cumulative on outstanding Preferred Shares from the Quarterly Dividend Payment Date next preceding the date of issue of such shares, subject to certain exceptions. Accrued but unpaid dividends shall not bear interest.

Dividends paid on the Preferred Shares in an amount less than the total amount of such dividends at the time accrued and payable on such shares shall be allocated pro rata on a share-by-share basis among all such shares at the time outstanding. Our board of directors may fix a record date for the determination of holders of Preferred Shares entitled to receive payment of a dividend or distribution declared thereon, which record date shall be not more than 60 days prior to the date fixed for the payment thereof.

*Voting Rights*. The holders of Preferred Shares shall have the following voting rights:

(A) Subject to the provision for adjustment hereinafter set forth, each Preferred Share shall entitle the holder thereof to 1,000 votes on all matters submitted to a vote of our stockholders. In the event ODP shall at any time declare or pay any dividend on our Common Stock payable in shares of our Common Stock, or effect a subdivision or combination or consolidation of the outstanding shares of our Common Stock (by reclassification or otherwise than by payment of a dividend in shares of our Common Stock) into a greater or lesser number of shares of our Common Stock, then in each such case the number of votes per share to which holders of Series A Preferred Stock were entitled immediately prior to such event shall be adjusted by multiplying such number by a fraction, the numerator of which is the number of shares of our Common Stock outstanding immediately after such event and the denominator of which is the number of shares of our Common Stock that were outstanding immediately prior to such event.

(B) Except as otherwise provided herein, in any other Certificate of Designations creating a series of Preferred Stock or any similar stock, or by law, the holders of Preferred Shares and the holders of shares of our Common Stock and any other capital stock of ODP having general voting rights shall vote together as one class on all matters submitted to a vote of our stockholders.

(C) Except as set forth in the Certificate of Designations, or as otherwise provided by law, holders of Preferred Shares shall have no special voting rights and their consent shall not be required (except to the extent they are entitled to vote with holders of our Common Stock as set forth herein) for taking any corporate action.

*Certain Restrictions*. Whenever quarterly dividends or other dividends or distributions payable on the Series A Preferred Stock are in arrears, thereafter and until all accrued and unpaid dividends and distributions, whether or not declared, on Preferred Shares outstanding shall have been paid in full, ODP shall not: (i) declare or pay dividends, or make any other distributions, on any shares of stock ranking junior (either as to dividends or upon liquidation, dissolution or winding up) to the Series A Preferred Stock; (ii) declare or pay dividends, or make any other distributions, on any shares of stock ranking on a parity (either as to dividends or upon liquidation, dissolution or winding up) with the Series A Preferred Stock, except dividends paid ratably on the Series A Preferred Stock and all such parity stock on which dividends are payable or in arrears in proportion to the total amounts to which the holders of all such shares are then entitled; (iii) redeem or purchase or otherwise acquire for consideration shares of any stock ranking junior (either as to dividends or upon liquidation, dissolution or winding up) to the Series A Preferred Stock, provided that ODP may at any time redeem, purchase or otherwise acquire shares of any such junior stock in exchange for shares of any stock of ODP ranking junior (either as to dividends or upon dissolution, liquidation or winding up) to the Series A Preferred Stock; or (iv) redeem or purchase or otherwise acquire for consideration any Preferred Shares, or any shares of stock ranking on a parity with the Series A Preferred Stock, except in accordance with a purchase offer made in writing or by publication (as determined by our board of directors) to all holders of such shares upon such terms as our board of directors, after consideration of the respective annual dividend rates and other relative rights and preferences of the respective series and classes, shall determine will result in fair and equitable treatment among the respective series or classes.

ODP shall not permit any of its subsidiaries to purchase or otherwise acquire for consideration any shares of stock of ODP unless ODP could, under the terms of the Certificate of Designations, purchase or otherwise acquire such shares at such time and in such manner.

3

*Liquidation, Dissolution or Winding Up.* Upon any liquidation, dissolution or winding up of ODP, no distribution shall be made (A) to the holders of shares of stock ranking junior (either as to dividends or upon liquidation, dissolution or winding up) to the Series A Preferred Stock unless, prior thereto, the holders of Preferred Shares shall have received the greater of (a) $1.00 per share, plus an amount equal to accrued and unpaid dividends and distributions thereon, whether or not declared, to the date of such payment, or (b) an aggregate amount per share, subject to the provision for adjustment described below, equal to 1,000 times the aggregate amount to be distributed per share to holders of shares of our Common Stock, or (B) to the holders of shares of stock ranking on a parity (either as to dividends or upon liquidation, dissolution or winding up) with the Series A Preferred Stock, except distributions made ratably on the Series A Preferred Stock and all such parity stock in proportion to the total amounts to which the holders of all such shares are entitled upon such liquidation, dissolution or winding up. In the event ODP shall at any time declare or pay any dividend on our Common Stock payable in shares of our Common Stock, or effect a subdivision or combination or consolidation of the outstanding shares of our Common Stock (by reclassification or otherwise than by payment of a dividend in shares of our Common Stock) into a greater or lesser number of shares of our Common Stock, then in each such case the aggregate amount to which holders of Preferred Shares were entitled immediately prior to such event under the proviso in clause (A) of the preceding sentence shall be adjusted by multiplying such amount by a fraction the numerator of which is the number of shares of our Common Stock outstanding immediately after such event and the denominator of which is the number of shares of our Common Stock that were outstanding immediately prior to such event.

*Consolidation, Merger, etc.* In case ODP shall enter into any consolidation, merger, combination or other transaction in which the shares of our Common Stock are exchanged for or changed into other stock or securities, cash and/or any other property (other than any merger of ODP with and into a direct or indirect subsidiary of ODP pursuant to which ODP becomes a direct or indirect wholly-owned subsidiary of a holding company that is, immediately prior to the effective time of such merger, a direct or indirect subsidiary of ODP, in accordance with Section 251(g) of the DGCL), then in any such case each Preferred Share shall at the same time be similarly exchanged or changed into an amount per share, subject to the provision for adjustment hereinafter set forth, equal to 1,000 times the aggregate amount of stock, securities, cash and/or any other property (payable in kind), as the case may be, into which or for which each share of our Common Stock is changed or exchanged. In the event ODP shall at any time declare or pay any dividend on our Common Stock payable in shares of our Common Stock, or effect a subdivision or combination or consolidation of the outstanding shares of our Common Stock (by reclassification or otherwise than by payment of a dividend in shares of our Common Stock) into a greater or lesser number of shares of our Common Stock, then in each such case the amount set forth in the preceding sentence with respect to the exchange or change of Preferred Shares shall be adjusted by multiplying such amount by a fraction, the numerator of which is the number of shares of our Common Stock outstanding immediately after such event and the denominator of which is the number of shares of our Common Stock that were outstanding immediately prior to such event.

*No Redemption.* The Preferred Shares shall not be redeemable.

*Rank.* The Series A Preferred Stock shall rank, with respect to the payment of dividends and the distribution of assets, junior to all series of any other class of ODP's Preferred Stock.

<div align="center">

**CERTAIN ANTI-TAKEOVER EFFECTS**

</div>

Certain provisions of our Charter, our Bylaws and the DGCL could have certain anti-takeover effects and may delay, deter or prevent a tender offer or takeover attempt that a stockholder might consider to be in its best interests, as discussed below:

*Authorized but Unissued Shares.* Subject to the requirements of The NASDAQ Stock Market LLC and other applicable law, authorized but unissued shares of our Common Stock may be available for future issuance without stockholder approval. We may use these additional shares for a variety of corporate purposes, including future public offerings to raise additional capital, corporate acquisitions and employee benefit plans. The existence of authorized but unissued

<div align="center">4</div>

---

shares of our Common Stock could render more difficult or discourage an attempt to obtain control of us by means of a tender offer, takeover attempt or otherwise.

*Undesignated Preferred Stock*. Our Charter provides that our board of directors may issue shares of Preferred Stock and fix the designations, voting powers, preferences and rights related to that Preferred Stock. Preferred Stock could be issued by our board of directors to increase the number of outstanding shares making a takeover more difficult and expensive.

*Advance Notice Requirements*. Our Bylaws establish an advance notice procedure for stockholders seeking to nominate candidates for election to the board of directors or for proposing matters which can be acted upon at stockholders' meetings.

*Proxy Access*. Our Bylaws contain provisions which provide that a stockholder, or group of up to 20 stockholders, that has owned continuously for at least three years shares of our Common Stock representing an aggregate of at least 3% of the voting power entitled to vote generally in the election of directors, may nominate and include in ODP's proxy materials a specified number of director nominees, provided that the stockholder(s) and nominee(s) satisfy the requirements in our Bylaws. The maximum number of stockholder nominees is generally the greater of (x) two or (y) 20% of the total number of our directors in office as of the last day on which notice of a nomination may be delivered or, if such amount is not a whole number, the closest whole number below 20%.

*No Cumulative Voting or Classified Board.* Our Charter and Bylaws do not provide for cumulative voting on the election of directors and we currently do not have a classified board.

*Delaware Business Combination Statute*. In general, Section 203 of the DGCL ("Section 203") prohibits a publicly held Delaware corporation from engaging in various "business combination" transactions with any interested stockholder for a period of three years following the date of the transactions in which the person became an interested stockholder. We are not subject to Section 203, as our Charter contains a provision electing to "opt-out" of Section 203.

5

# EXHIBIT 3



**Nasdaq** | Market Activity | News | Insights

OPTION CHAIN: **ODP**

✎ Edit my quotes

## The ODP Corporation
### Common Stock (ODP)

**Nasdaq** Listed

**$47.99** +0.67 (+1.42%)
Bid: **$47.96** x 20 Ask: **$47.99** x 17
Volume: **99,205**
JUL 17, 2023 2:52 PM ET

**● 1**   ✚ ADD TO WATCHLIST   ✚ ADD TO PORTFOLIO

QUOTES
Summary
Real-Time **LIVE**
After-Hours
Pre-Market
Charts

NEWS & ANALYSIS
News
Press Releases
Analyst Research

Dividend History
Historical Quotes
Historical NOCP
Financials
Earnings
P/E & PEG Ratios
**Option Chain**
Short Interest
Institutional Holdings
Insider Activity
SEC Filings
Revenue EPS

ODP  ›  ODP OPTION CHAIN

# ODP Option Chain

| Expiration Dates | Option | Strategy | Moneyness | Type |
|---|---|---|---|---|
| All ⌄ | BOX ⌃ | Calls & Puts ⌄ | Near the Money ⌄ | All (Types) ⌄ |

Composite
CBO
AOE
NYO
PHO
MOE
BOX
**ISE**
BTO
NSO
C2O
BXO
MIAX

| Exp. Date | | Change | Bid | Ask | Volume | Open Int. | Strike | Puts Last | Cha |
|---|---|---|---|---|---|---|---|---|---|
| **July 21, 2023** | | | | | | | | | |
| Jul 21 | 8 | -- | -- | -- | -- | 1 | 44.00 | 0.46 | |
| Jul 21 | 5 | -- | -- | -- | -- | 522 | 45.00 | -- | |
| Jul 21 | -- | -- | -- | -- | -- | 3 | 46.00 | -- | |
| Jul 21 | 6 | -- | -- | -- | -- | 454 | 47.00 | 0.30 | |
| Jul 21 | -- | -- | -- | -- | -- | 23 | 48.00 | -- | |
| Jul 21 | -- | -- | -- | -- | -- | 9 | 49.00 | -- | |
| Jul 21 | 8 | -- | -- | -- | -- | 18 | 50.00 | -- | |
| **August 18, 2023** | | | | | | | | | |
| Aug 18 | -- | -- | -- | -- | -- | -- | 44.00 | -- | |
| Aug 18 | -- | -- | -- | -- | -- | -- | 45.00 | -- | |
| Aug 18 | -- | -- | -- | -- | -- | 1 | 46.00 | -- | |
| Aug 18 | -- | -- | -- | -- | -- | 12 | 47.00 | -- | |
| Aug 18 | -- | -- | -- | -- | -- | 19 | 48.00 | -- | |

FEEDBACK



Open an account
**E✱TRADE**
from Morgan Stanley

**U.S. Options**

# Symbol Directory

Welcome to the Symbol Directory section of Cboe.com. Directories are broken down into the Cboe product categories linked below. Cboe also offers downloadable spreadsheets of the directories which are linked from the top of each page. *Please note that Cboe's symbol directories include options listed on Cboe only and that all directories are updated daily using information from the previous business day.*

For more information about Weeklys visit the Available Weeklys page.

| Equity & Index Options | Weeklys Options℠ | Quarterlys Options |
| --- | --- | --- |

⬇ Download            A B C D E F G H I J K L M N O P Q R S **T** U V W X Y Z

| NAME OF UNDERLYING EQUITY | STOCK SYMBOL | DPM NAME | POST/STATION |
| --- | --- | --- | --- |
| T-MOBILE US INC COM | TMUS | Susquehanna Securities, LLC | 3/1 |
| T2 BIOSYSTEMS INC COM NEW | TTOO | Citadel Securities LLC | 5/1 |
| TABOOLA.COM LTD ORD SHS | TBLA | Wolverine Trading, LLC | 3/1 |
| TABULA RASA HEALTHCARE INC COM | TRHC | Wolverine Trading, LLC | 3/1 |
| TAIWAN SEMICONDUCTOR MFG LTD SPONSORED ADS | TSM | Morgan Stanley & Co. LLC | 4/1 |
| TAKE-TWO INTERACTIVE SOFTWARE COM | TTWO | Citadel Securities LLC | 3/1 |
| TAKEDA PHARMACEUTICAL CO LTD SPONSORED ADS | TAK | GTS Securities LLC | 6/1 |
| TAKUNG ART LTD COM NEW | TKAT | Citadel Securities LLC | 6/1 |
| TAL EDUCATION GROUP SPONSORED ADS | TAL | Citadel Securities LLC | 3/1 |
| TALIS BIOMEDICAL CORP COM NEW | TLIS | Susquehanna Securities, LLC | 1/1 |
| TALKSPACE INC COM | TALK | Wolverine Trading, LLC | 3/1 |
| TALOS ENERGY INC COM | TALO | Wolverine Trading, LLC | 3/1 |
| TANDEM DIABETES CARE INC COM NEW | TNDM | Susquehanna Securities, LLC | 3/1 |
| TANGER FACTORY OUTLET CTRS INC COM | SKT | Group One Trading, L.P. | 3/1 |
| TAPESTRY INC COM | TPR | Susquehanna Securities, LLC | 3/1 |
| TARGA RES CORP COM | TRGP | Citadel Securities LLC | 2/1 |
| TARGET CORP COM | TGT | Susquehanna Securities, LLC | 2/1 |
| TARGET HOSPITALITY CORP COM | TH | Group One Trading, L.P. | 4/1 |

| NAME OF UNDERLYING EQUITY | STOCK SYMBOL | DPM NAME | POST/STATION |
|---|---|---|---|
| TEXAS CAP BANCSHARES INC COM | TCBI | Belvedere Trading LLC | 6/1 |
| TEXAS INSTRS INC COM | TXN | Susquehanna Securities, LLC | 3/1 |
| TEXAS ROADHOUSE INC COM | TXRH | GTS Securities LLC | 1/1 |
| TEXTAINER GROUP HOLDINGS LTD SHS | TGH | Wolverine Trading, LLC | 3/1 |
| TEXTRON INC COM | TXT | Morgan Stanley & Co. LLC | 3/1 |
| TFI INTL INC COM | TFII | Wolverine Trading, LLC | 3/1 |
| TFS FINL CORP COM | TFSL | Susquehanna Securities, LLC | 1/1 |
| TG THERAPEUTICS INC COM | TGTX | Morgan Stanley & Co. LLC | 4/1 |
| TH INTERNATIONAL LIMITED ORDINARY SHARES | THCH | Group One Trading, L.P. | 3/1 |
| The 3D Printing ETF | PRNT | Belvedere Trading LLC | 6/1 |
| THE AARONS COMPANY INC COM | AAN | Susquehanna Securities, LLC | 5/1 |
| THE ARENA GROUP HOLDINGS INC COM | AREN | Susquehanna Securities, LLC | 1/1 |
| THE BEACHBODY COMPANY INC COM CL A | BODY | Citadel Securities LLC | 2/1 |
| THE BEAUTY HEALTH COMPANY COM CL A | SKIN | Citadel Securities LLC | 3/1 |
| THE CIGNA GROUP COM | CI | Susquehanna Securities, LLC | 5/1 |
| THE LION ELECTRIC COMPANY COMMON STOCK | LEV | Susquehanna Securities, LLC | 1/1 |
| THE NECESSITY RETAIL REIT INC COM CLASS A | RTL | Group One Trading, L.P. | 4/1 |
| THE ODP CORP COM | ODP | Wolverine Trading, LLC | 1/1 |
| THE ONE GROUP HOSPITALITY INC COM | STKS | Susquehanna Securities, LLC | 6/1 |
| THE REAL BROKERAGE INC COM NEW | REAX | Susquehanna Securities, LLC | 6/1 |
| THE REALREAL INC COM | REAL | Susquehanna Securities, LLC | 1/1 |
| THE TRADE DESK INC COM CL A | TTD | Citadel Securities LLC | 3/1 |
| THE9 LTD SPON ADS NEW | NCTY | Belvedere Trading LLC | 3/1 |
| THERAPEUTICSMD INC COM NEW | TXMD | Citadel Securities LLC | 6/1 |
| THERATECHNOLOGIES INC COM | THTX | Citadel Securities LLC | 1/1 |
| THERAVANCE BIOPHARMA INC COM | TBPH | Group One Trading, L.P. | 4/1 |
| THERMO FISHER SCIENTIFIC INC COM | TMO | GTS Securities LLC | 6/1 |
| THOMSON REUTERS CORP. COM | TRI | GTS Securities LLC | 3/1 |

| Underlying Symbol | Description | Tick | Closing Time |
|---|---|---|---|
| MA | MASTERCARD INC | Penny | 4:00PM EST |
| BRK B | BERKSHIRE HATHAWAY CLASS B | Penny | 4:00PM EST |
| AMLX | AMYLYX PHARMACEUTICALS, INC. | Non-Penny | 4:00PM EST |
| NKTX | NKARTA INC | Non-Penny | 4:00PM EST |
| DJP | iPATH BLOOMBERG COMMODITY INDEX TOTAL RETURN ETN | Non-Penny | 4:00PM EST |
| APTV | APTIV PLC | Non-Penny | 4:00PM EST |
| CARE | CARTER BANKSHARES INC | Non-Penny | 4:00PM EST |
| JEPI | JPMORGAN EQUITY PREMIUM INCOME ETF | Non-Penny | 4:00PM EST |
| CMG | CHIPOTLE MEXICAN GRILL INC | Non-Penny | 4:00PM EST |
| SWI | SOLARWINDS CORP | Non-Penny | 4:00PM EST |
| ALEC | ALECTOR INC | Non-Penny | 4:00PM EST |
| PEG | PUBLIC SVC ENTRPS GROUP INC | Non-Penny | 4:00PM EST |
| BCE | BCE INC | Non-Penny | 4:00PM EST |
| AAN | AARON'S COMPANY INC | Non-Penny | 4:00PM EST |
| PYPL | PAYPAL HOLDINGS, INC. | Penny | 4:00PM EST |
| DVAX | DYNAVAX TECHNOLOGIES CORP | Non-Penny | 4:00PM EST |
| FORM | FORMFACTOR INC | Non-Penny | 4:00PM EST |
| SG | SWEETGREEN, INC. | Non-Penny | 4:00PM EST |
| SNAP | SNAP INC. | Penny | 4:00PM EST |
| JBHT | HUNT J B TRANS SVC INC | Non-Penny | 4:00PM EST |
| GDX | VANECK VECTORS GOLD MINERS | Penny | 4:00PM EST |
| DPRO | DRAGANFLY INC. | Non-Penny | 4:00PM EST |
| MRTX | MIRATI THERAPEUTICS | Non-Penny | 4:00PM EST |
| ABBV | ABBVIE INC | Penny | 4:00PM EST |
| EL | ESTEE LAUDER COMPANIES INC | Non-Penny | 4:00PM EST |
| DRQ | DRIL QUIP INC | Non-Penny | 4:00PM EST |
| VVOS | VIVOS THERAPEUTICS INC | Non-Penny | 4:00PM EST |
| CZR | CAESARS ENTERTAINMENT CORPORATION | Penny | 4:00PM EST |
| MOON | DIREXION MOONSHOT INNOVATORS ETF | Non-Penny | 4:00PM EST |
| MPLX | MPLX LP | Non-Penny | 4:00PM EST |
| COLM | COLUMBIA SPORTSWEAR COMPANY | Non-Penny | 4:00PM EST |
| TBT | PROSH ULT SH LEH 20 PLUS TYS | Penny | 4:00PM EST |
| HWKN | HAWKINS INC | Non-Penny | 4:00PM EST |
| SGHC | SUPER GROUP LIMITED | Non-Penny | 4:00PM EST |
| AXDX | ACCELERATE DIAGNOSTICS INC | Non-Penny | 4:00PM EST |
| SLYV | SPDR S&P 600 SMALL CAP VALUE ETF | Non-Penny | 4:00PM EST |
| AG | FIRST MAJESTIC SILVER CORP | Penny | 4:00PM EST |
| SPHB | INVESCO S&P 500 HIGH BETA ETF | Non-Penny | 4:00PM EST |
| BKE | BUCKLE INC | Non-Penny | 4:00PM EST |
| SMIN | ISHARES MSCI INDIA SMALL-CAP ETF | Non-Penny | 4:00PM EST |
| BOX | BOX, INC. | Non-Penny | 4:00PM EST |
| BZUN | BAOZUN INC. | Non-Penny | 4:00PM EST |
| ECH | ISHARES MSCI CHILE ETF | Non-Penny | 4:00PM EST |
| DBRG | DIGITALBRIDGE GROUP, INC. | Non-Penny | 4:00PM EST |
| CORN | TEUCRIUM CORN FUND | Non-Penny | 4:00PM EST |
| ATGE | ADTALEM GLOBAL EDUCATION INC. | Non-Penny | 4:00PM EST |
| ERY | DIREX DLY ENERGY BEAR 3X | Non-Penny | 4:00PM EST |
| EQNR | EQUINOR ASA | Non-Penny | 4:00PM EST |
| FTK | FLOTEK INDUSTRIES INC (DE) | Non-Penny | 4:00PM EST |
| GOTU | GSX TECHEDU INC. | Non-Penny | 4:00PM EST |
| HCA | HCA HOLDINGS INC | Non-Penny | 4:00PM EST |
| CCAP | CRESCENT CAPITAL BDC INC | Non-Penny | 4:00PM EST |
| SQ | SQUARE, INC. | Penny | 4:00PM EST |
| BXMT | BLACKSTONE MORTGAGE TRUST INC | Non-Penny | 4:00PM EST |
| CEQP | CRESTWOOD EQUITY PARTNERS LP | Non-Penny | 4:00PM EST |
| ACI | ALBERTONS COMPANIES, INC. | Non-Penny | 4:00PM EST |
| DAR | DARLING INTERNATIONAL, INC. | Non-Penny | 4:00PM EST |

| | | | |
|---|---|---|---|
| ATHX | ATHERSYS, INC. | Non-Penny | 4:00PM EST |
| JCI | JOHNSON CONTROLS, INC. | Non-Penny | 4:00PM EST |
| AMBC | AMBAC FINANCIAL GROUP INC | Non-Penny | 4:00PM EST |
| NRIX | NURIX THERAPEUTICS, INC. | Non-Penny | 4:00PM EST |
| CVI | CVR ENERGY INC | Non-Penny | 4:00PM EST |
| TMPO | TEMPO AUTOMATION HOLDINGS | Non-Penny | 4:00PM EST |
| EWA | ISHARES MSCI AUSTRALIA IND FD | Non-Penny | 4:00PM EST |
| FXA | CURRENCY SH AUS DOL TR | Non-Penny | 4:00PM EST |
| FXC | CURRENCY SH CAN DOL TR | Non-Penny | 4:00PM EST |
| AYRO | AYRO, INC. | Non-Penny | 4:00PM EST |
| BOIL | PROSHARES ULT NATGAS NEW | Non-Penny | 4:00PM EST |
| ALV | AUTOLIV, INC. | Non-Penny | 4:00PM EST |
| ONTX | ONCONOVA THERAPEUTICS, INC. | Non-Penny | 4:00PM EST |
| NAVB | NAVIDEA BIOPHARMACEUTICALS, INC. | Non-Penny | 4:00PM EST |
| NFG | NATIONAL FUEL GAS CO NJ | Non-Penny | 4:00PM EST |
| AA | ALCOA CORPORATION | Penny | 4:00PM EST |
| MYTE | MYT NETHERLANDS PARENT B.V. | Non-Penny | 4:00PM EST |
| NXPI | NXP SEMICONDUCTOR N.V | Non-Penny | 4:00PM EST |
| CGC | CANOPY GROWTH CORP | Penny | 4:00PM EST |
| ACEL | ACCEL ENTERTAINMENT INC | Non-Penny | 4:00PM EST |
| PFC | PREMIER FINANCIAL CORP (OHIO) | Non-Penny | 4:00PM EST |
| BRCC | BRC INC. | Non-Penny | 4:00PM EST |
| ADVM | ADVERUM BIOTECHNOLOGIES, INC. | Non-Penny | 4:00PM EST |
| RGTI | RIGETTI COMPUTING INC | Non-Penny | 4:00PM EST |
| EE | EXCELERATE ENERGY INC | Non-Penny | 4:00PM EST |
| TWLO | TWILIO, INC. | Penny | 4:00PM EST |
| KTOS | KRATOS DEFENSE AND SECURITY | Non-Penny | 4:00PM EST |
| ICVT | ISHARES CONVERTIBLE BOND ETF | Non-Penny | 4:00PM EST |
| XEL | XCEL ENERGY INCORPORATED | Non-Penny | 4:00PM EST |
| CGDV | CAPITAL GROUP DIVIDEND VALUE ETF | Non-Penny | 4:00PM EST |
| ULTA | ULTA SALON, COSM&FRAG INC | Non-Penny | 4:00PM EST |
| ACIW | ACI WORLDWIDE INC | Non-Penny | 4:00PM EST |
| NAPA | DUCKHORN PORTFOLIO INC | Non-Penny | 4:00PM EST |
| ACET | ADICET BIO INC | Non-Penny | 4:00PM EST |
| RE | EVEREST RE GROUP LTD BERMUDA | Non-Penny | 4:00PM EST |
| AFCG | AFC GAMMA, INC. | Non-Penny | 4:00PM EST |
| NSC | NORFOLK SOUTHERN CORP | Non-Penny | 4:00PM EST |
| GOGO | GOGO, INC. | Non-Penny | 4:00PM EST |
| ILMN | ILLUMINA INC | Non-Penny | 4:00PM EST |
| FBRT | FRANKLIN BSP REALTY TRUST, INC. | Non-Penny | 4:00PM EST |
| MCB | METROPOLITAN BANK HOLDING CORP. | Non-Penny | 4:00PM EST |
| YELP | YELP INCORPORATED | Non-Penny | 4:00PM EST |
| CWAN | CLEARWATER ANALYTICS HOLDINGS INC | Non-Penny | 4:00PM EST |
| TTD | TRADE DESK INC | Penny | 4:00PM EST |
| CLOV | CLOVER HEALTH INVESTMENTS, CORPORATION | Penny | 4:00PM EST |
| HIMX | HIMAX TECHNOLOGIES, INC. | Non-Penny | 4:00PM EST |
| ACHC | ACADIA HEALTHCARE COMPANY, INC. | Non-Penny | 4:00PM EST |
| RCI | ROGERS COMMUNICATIONS INC | Non-Penny | 4:00PM EST |
| FLJP | FRANKLIN FTSE JAPAN ETF | Non-Penny | 4:00PM EST |
| TSLA | TESLA MOTORS INC | Penny | 4:00PM EST |
| LYV | LIVE NATION ENTERTAINMENT INC | Non-Penny | 4:00PM EST |
| EWC | ISHARES MSCI CANADA IND FD | Penny | 4:00PM EST |
| XNCR | XENCOR INC | Non-Penny | 4:00PM EST |
| ACT | ENACT HOLDINGS, INC. | Non-Penny | 4:00PM EST |
| NS | NUSTAR ENERGY LP | Non-Penny | 4:00PM EST |
| AJX | GREAT AJAX CORP | Non-Penny | 4:00PM EST |
| ODP | THE ODP CORPORATION | Non-Penny | 4:00PM EST |
| ATR | APTARGROUP INC. | Non-Penny | 4:00PM EST |

| Company | Symbol | TXN | Auction Eli | Tape |
|---|---|---|---|---|
| Agilent Tec | A | TXN7-5 | Y | Tape A |
| Alcoa Corp | AA | TXN6-6 | Y | Tape A |
| AXS First Pr | AAA | TXN9-8 | Y | Tape B |
| Goldman S. | AAAU | TXN5-8 | Y | Tape B |
| Ares Acqui: | AAC | TXN4-8 | Y | Tape A |
| Ares Acqui: | AAC+ | TXN8-8 | Y | Tape A |
| Ares Acqui: | AAC.U | TXN6-8 | Y | Tape A |
| ATA Creativ | AACG | TXN10-4 | Y | Tape C |
| Armada Ac | AACI | TXN11-2 | Y | Tape C |
| Armada Ac | AACIU | TXN12-1 | Y | Tape C |
| Armada Ac | AACIW | TXN12-8 | Y | Tape C |
| Ares Acqui: | AACT | TXN3-8 | Y | Tape A |
| Ares Acqui: | AACT+ | TXN4-8 | Y | Tape A |
| Ares Acqui: | AACT.U | TXN6-8 | Y | Tape A |
| Aadi Biosci | AADI | TXN11-8 | Y | Tape C |
| AdvisorSha | AADR | TXN12-7 | Y | Tape C |
| Arlington A | AAIC | TXN8-8 | Y | Tape A |
| Arlington A | AAIC-B | TXN6-8 | Y | Tape A |
| Arlington A | AAIC-C | TXN9-8 | Y | Tape A |
| Arlington A | AAIN | TXN8-8 | Y | Tape A |
| American / | AAL | TXN10-8 | Y | Tape C |
| Apollo Asse | AAM-A | TXN6-8 | Y | Tape A |
| Apollo Asse | AAM-B | TXN6-8 | Y | Tape A |
| Altisource / | AAMC | TXN7-8 | Y | Tape B |
| Atlantic Am | AAME | TXN11-4 | Y | Tape C |
| The Aaron' | AAN | TXN6-8 | Y | Tape A |
| Applied Op | AAOI | TXN10-8 | Y | Tape C |
| Aaon Inc | AAON | TXN12-5 | Y | Tape C |
| ADVANCE / | AAP | TXN8-1 | Y | Tape A |
| GraniteSha | AAPB | TXN14-7 | Y | Tape C |
| Direxion Da | AAPD | TXN14-7 | Y | Tape C |
| Apple Inc. | AAPL | TXN13-1 | Y | Tape C |
| Direxion Da | AAPU | TXN13-5 | Y | Tape C |
| AMERICAN | AAT | TXN5-5 | Y | Tape A |
| Almaden N | AAU | TXN9-8 | Y | Tape B |
| iShares MS | AAXJ | TXN14-6 | Y | Tape C |
| AllianceBer | AB | TXN6-8 | Y | Tape A |
| ABBVIE INC | ABBV | TXN7-1 | Y | Tape A |
| Amerisourc | ABC | TXN4-4 | Y | Tape A |
| Ameris Ban | ABCB | TXN12-4 | Y | Tape C |
| AbCellera E | ABCL | TXN14-2 | Y | Tape C |
| Abcam plc . | ABCM | TXN11-4 | Y | Tape C |
| Abeona Th | ABEO | TXN10-2 | Y | Tape C |
| Absolute Sc | ABEQ | TXN7-8 | Y | Tape B |
| AMBEV S.A | ABEV | TXN3-7 | Y | Tape A |
| Asbury Aut | ABG | TXN4-8 | Y | Tape A |

| | | | |
|---|---|---|---|
| The ODP Cc | ODP | TXN11-2 | Y | Tape C |
| Osisko Dev | ODV | TXN7-8 | Y | Tape A |
| Osisko Dev | ODVWW | TXN14-8 | Y | Tape C |
| Orion S.A. | OEC | TXN4-5 | Y | Tape A |
| iShares S&I | OEF | TXN5-3 | Y | Tape B |
| Orion Ener | OESX | TXN14-6 | Y | Tape C |
| ALPS O'Sha | OEUR | TXN7-8 | Y | Tape B |
| Corporate ( | OFC | TXN1-8 | Y | Tape A |
| Oconee Fe | OFED | TXN11-1 | Y | Tape C |
| OFG BANC( | OFG | TXN5-8 | Y | Tape A |
| Orthofix M | OFIX | TXN11-7 | Y | Tape C |
| Omega Fle | OFLX | TXN13-4 | Y | Tape C |
| OFS Capital | OFS | TXN10-4 | Y | Tape C |
| OFS Capital | OFSSH | TXN11-6 | Y | Tape C |
| Empire Sta | OGCP | TXN8-8 | Y | Tape B |
| OGE Energ | OGE | TXN6-4 | Y | Tape A |
| Oragenics I | OGEN | TXN1-5 | Y | Tape B |
| Organigran | OGI | TXN11-3 | Y | Tape C |
| ALPS  O'Sha | OGIG | TXN5-6 | Y | Tape B |
| Organon & | OGN | TXN7-3 | Y | Tape A |
| ONE GAS, I | OGS | TXN1-8 | Y | Tape A |
| OPY Acquis | OHAA | TXN11-4 | Y | Tape C |
| OPY Acquis | OHAAU | TXN13-5 | Y | Tape C |
| OPY Acquis | OHAAW | TXN11-4 | Y | Tape C |
| Omega He | OHI | TXN2-5 | Y | Tape A |
| O-I Glass, I | OI | TXN1-8 | Y | Tape A |
| INVESCO N | OIA | TXN4-8 | Y | Tape A |
| Orbital Infr | OIG | TXN13-1 | Y | Tape C |
| VanEck Oil | OIH | TXN8-8 | Y | Tape B |
| Oceaneerir | OII | TXN9-2 | Y | Tape A |
| MicroSecto | OILD | TXN3-7 | Y | Tape B |
| ProShares I | OILK | TXN9-3 | Y | Tape B |
| MicroSecto | OILU | TXN9-2 | Y | Tape B |
| OIL STATES | OIS | TXN5-4 | Y | Tape A |
| Oneok, Inc. | OKE | TXN4-2 | Y | Tape A |
| Okta, Inc. C | OKTA | TXN11-3 | Y | Tape C |
| OKYO Phar | OKYO | TXN10-2 | Y | Tape C |
| The OLB Gr | OLB | TXN14-4 | Y | Tape C |
| Universal D | OLED | TXN11-8 | Y | Tape C |
| OmniLit Ac | OLIT | TXN14-1 | Y | Tape C |
| OmniLit Ac | OLITU | TXN10-5 | Y | Tape C |
| OmniLit Ac | OLITW | TXN11-2 | Y | Tape C |
| Olink Holdi | OLK | TXN11-2 | Y | Tape C |
| Ollie's Barg | OLLI | TXN13-4 | Y | Tape C |
| Olema Pha | OLMA | TXN13-1 | Y | Tape C |
| Olin Corp. | OLN | TXN3-4 | Y | Tape A |
| Olo Inc. | OLO | TXN6-3 | Y | Tape A |

Options                                                                                    ›

## Instrument Type

Stocks                                                                               ⌄

## Filter

ODP

| Symbol ▲ | Name |
| --- | --- |
| ODP | THE ODP CORPORATION |

« First    ‹ Previous    1    Next ›    Last »



## Our Exchanges

# EXHIBIT 4

Duplicates Needed

| | |
|---|---|

Affiliate Attention          Affiliate Line 1          Affiliate Line 2          Affiliate City

Affiliate State          Affiliate Postal Code          Country

---

## Multiple Account Broker Feed

<div style="float:right">Edit</div>

**Individual (█████)**
Method of Delivery: Paper
Statement

---

## Agreements

| Agreement Type | Signed Version | Status | Latest Version | Country | Created At |
|---|---|---|---|---|---|
| brokerage_agreement | 0 | agreed | 2 | US | Sep 10, 2020, 02:49:23 EDT |
| instant_agreement | 0 | agreed | 2 | US | Sep 10, 2020, 02:49:23 EDT |
| margin_agreement | -- | -- | 1 | US | -- |
| retirement_ira_roth_agreement | -- | -- | 1 | US | -- |
| retirement_ira_traditional_agreement | -- | -- | 1 | US | -- |
| retirement_margin_agreement | -- | -- | 1 | US | -- |

---

## Cash Management Agreements

| CASH MANAGEMENT CUSTOMER AGREEMENT | | IND SERVICE DISCLOSURE | |
|---|---|---|---|
| ACCEPTED | Yes | ACCEPTED | Yes |
| ACCEPTED AT | 06/09/2020, 19:06:28 | ACCEPTED AT | 06/09/2020, 19:06:34 |
| ACCEPTED VERSION | 1 | ACCEPTED VERSION | 1 |

| DEBIT CARD AGREEMENT | |
|---|---|
| ACCEPTED | Yes |
| ACCEPTED AT | 06/09/2020, 19:06:31 |
| ACCEPTED VERSION | 1 |

---

## Disclosure Consent

<div style="float:right">Edit</div>

Object To Disclosure

No

## Affiliations

Edit

Robinhood Employee

No

Heightened Supervision

No

## Is Large Trader

Edit

Is Large Trader

No

## Account Application

| Created At | Updated At | State | Margin Allowed |
|---|---|---|---|
| Mar 24, 2020, 09:47:57 EDT | Mar 24, 2020, 10:01:48 EDT | Approved Provisioned | True |

| Approved At | Approved By | Rejected At | Rejected By |
|---|---|---|---|
| Mar 24, 2020, 10:01:48 EDT | ███████████ | | |

| Automatically Approved | Automatically Rejected | Manual Review Assignee |
|---|---|---|
| True | | |



# Robinhood 

85 Willow Rd, Menlo Park, CA 94025
help@robinhood.com

01/01/2021 to 01/31/2021

**Brandon Charnas** Account #
Cash Management ACH Account #

■ Options        ■ Equities        ■ Cash and Cash Equivalents

### Account Summary

|  | Opening Balance | Closing Balance |
|---|---|---|
| Brokerage Cash Balance | | |
| Deposit Sweep Balance | | |
| Total Securities | | |
| **Portfolio Value** | | |

### Portfolio Allocation



### Income and Expense Summary

|  | This Period | Year to Date |
|---|---|---|
| Dividends | | |
| Capital Gains Distributions | | |
| Interest Earned | | |

The Robinhood Cash Management Annual Percentage Yield (APY) is 0.30% as of the closing date of this statement. APY is determined by the program banks into which your uninvested cash is swept, and may change at any time. Investment products are not FDIC-insured, not bank guaranteed, and may lose value. Uninvested cash swept to the program banks is eligible for FDIC insurance up to applicable limits, subject to FDIC rules. The Securities Investor Protection Corporation has taken the position that uninvested cash swept to the program banks is not covered by the Securities Investor Protection Act.

This statement shall be conclusive if not objected to in writing within ten days (except with respect to debit card transactions). Errors and omissions exempted. Please address all communications to the firm and not to the individuals. Address changes or other material changes in your account should be directed to the office servicing your account. Kindly mention your account number. This statement should be retained for income tax purposes.

**Account Activity**

| Description | Symbol | Acct Type | Transaction | Date | Qty | Price | Debit | Credit |
|---|---|---|---|---|---|---|---|---|
| ███ ████ | ██ | ███ | ██ | ████ | █ | ███ | ████ | |
| ███ ████ | ██ | ███ | ██ | ████ | █ | ███ | ████ | |
| ███ ████ | ██ | ███ | ██ | ████ | █ | ███ | ████ | |
| ███ ████ | ██ | ███ | ██ | ████ | █ | ███ | ████ | |
| ███ ████ | ██ | ███ | ██ | ████ | █ | ███ | ████ | |
| ███ ████ | ██ | ███ | ██ | ████ | █ | ███ | ████ | |
| ███ ████ | ██ | ███ | ██ | ████ | █ | ███ | ████ | |
| ███ ████ | ██ | ███ | ██ | ████ | █ | ███ | ████ | |
| Office Depot Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 100 | $28.50 | $2,850.00 | |
| Office Depot Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 100 | $28.50 | $2,850.00 | |
| Office Depot Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 100 | $28.50 | $2,850.00 | |
| Office Depot Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 100 | $28.50 | $2,850.00 | |
| Office Depot Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 100 | $28.50 | $2,850.00 | |
| Office Depot Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 82 | $28.49 | $2,336.18 | |
| Office Depot Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 98 | $28.49 | $2,792.02 | |

### Account Activity

| Description | Symbol | Acct Type | Transaction | Date | Qty | Price | Debit | Credit |
|---|---|---|---|---|---|---|---|---|
| Office Depot Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 10 | $28.49 | $284.90 | |
| Office Depot Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 10 | $28.49 | $284.90 | |
| Office Depot Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 100 | $28.49 | $2,849.00 | |
| Office Depot Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 100 | $28.49 | $2,849.00 | |
| Office Depot Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 100 | $28.48 | $2,847.50 | |
| Office Depot Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 8 | $28.80 | $230.40 | |
| Office Depot Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 92 | $28.80 | $2,649.60 | |
| Office Depot Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 8 | $28.80 | $230.40 | |
| Office Depot Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 8 | $28.80 | $230.40 | |
| Office Depot Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 92 | $28.80 | $2,649.60 | |
| Office Depot Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 92 | $28.80 | $2,649.60 | |
| Office Depot Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 96 | $28.80 | $2,764.80 | |
| Office Depot Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 100 | $28.80 | $2,880.00 | |
| Office Depot Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 4 | $28.80 | $115.20 | |
| Office Depot Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 222 | $28.86 | $6,408.03 | |

**Account Activity**

| Description | Symbol | Acct Type | Transaction | Date | Qty | Price | Debit | Credit |
|---|---|---|---|---|---|---|---|---|
| Office Depot<br>Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 915 | $28.70 | $26,257.39 | |
| Office Depot<br>Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 585 | $28.70 | $16,786.58 | |
| Office Depot<br>Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/30/2020 | 1,000 | $28.93 | $28,930.00 | |

**Account Activity**

| Description | Symbol | Acct Type | Transaction | Date | Qty | Price | Debit | Credit |
|---|---|---|---|---|---|---|---|---|
| ▆▆▆▆ ▆▆▆▆ | ▆ | ▆ | ▆ | ▆▆▆ | ▆ | ▆▆ | ▆▆▆ | |
| ▆▆▆▆ ▆▆▆▆ | ▆ | ▆ | ▆ | ▆▆▆ | ▆ | ▆▆ | ▆▆▆ | |
| ▆▆▆▆ ▆▆▆▆ | ▆ | ▆ | ▆ | ▆▆▆ | ▆ | ▆▆ | ▆▆▆ | |
| ▆▆▆▆ ▆▆ | ▆ | ▆ | ▆ | ▆▆▆ | ▆ | ▆▆ | | ▆▆▆ |
| ▆▆▆▆ ▆▆ | ▆ | ▆ | ▆ | ▆▆▆ | ▆ | ▆▆ | | ▆▆▆ |
| Office Depot Unsolicited, CUSIP: 88337F105 | ODP | Margin | Buy | 12/31/2020 | 100 | $28.52 | $2,852.44 | |
| ▆▆▆▆ ▆▆▆▆▆▆ | ▆ | ▆ | ▆ | ▆▆▆ | ▆ | ▆ | | ▆▆▆ |
| ▆▆▆▆ ▆▆▆▆▆▆ | ▆ | ▆ | ▆ | ▆▆▆ | ▆ | ▆ | | ▆▆▆ |
| ▆▆▆▆ ▆▆ | ▆ | ▆ | ▆ | ▆▆▆ | ▆ | ▆▆ | | ▆▆▆ |
| ▆▆▆▆ | | ▆ | ▆ | ▆▆▆ | | | ▆▆▆ | |
| ▆▆▆▆ | | ▆ | ▆ | ▆▆▆ | | | ▆▆▆ | |
| ▆▆▆▆ | ▆ | ▆ | ▆ | ▆▆▆ | ▆ | ▆▆ | | ▆▆ |
| ▆▆▆▆ ▆▆ | ▆ | ▆ | ▆ | ▆▆▆ | ▆ | ▆▆ | ▆▆▆ | |
| ▆▆▆▆ ▆▆ | ▆ | ▆ | ▆ | ▆▆▆ | ▆ | ▆▆ | ▆▆▆ | |
| ▆▆▆▆ ▆▆ | ▆ | ▆ | ▆ | ▆▆▆ | ▆ | ▆▆ | ▆▆▆ | |

# EXHIBIT 5

Jan 11, 2021 12:58:54

## ODP Board Is Reviewing Acquisition Proposal From Staples (1)

By Hari Govind and Bloomberg Automation

(Bloomberg) -- The ODP CORP Gets Acquisition Proposal From Staples, according to a press release.

Key excerpts:

- The ODP Corporation confirmed that it has received a proposal to acquire the Company from USR Parent, Inc., the parent company of Staples and a portfolio company of Sycamore Partners
- Board is evaluating various components of the proposal, including potential antitrust and other regulatory challenges given USR Parent's ownership of Staples and past regulatory decisions blocking the combination of the two companies, purchase price, and closing conditionality
- Simpson Thacher & Bartlett LLP and Goldman Sachs & Co. LLC are acting as legal and financial advisor to the Company, respectively
- NOTE: Earlier, Staples Proposes to Buy ODP for $40/Share in Cash: M&A Snapshot

To view the source of this information, click here

(Adds details)

Related ticker:
ODP US (ODP Corp/The)

To contact the reporter on this story:
Hari Govind in San Francisco at hgovind@bloomberg.net

To contact the editor responsible for this story:
Chakradhar Adusumilli at cadusumilli@bloomberg.net

*This story was produced with the assistance of Bloomberg Automation.*

# EXHIBIT 6

| ODP US Equity | Export | Settings | | Page 1/3   Historical Price Table |
|---|---|---|---|---|

ODP Corp/The

| Range | 09/01/2020 - 01/29/2021 | | Period | Daily | | High | 47.51 on | 01/22/21 |
|---|---|---|---|---|---|---|---|---|
| Market | Last Price | Volume | Currency | USD | | Low | 18.30 on | 09/29/20 |
| View | Price Table | | | | | Average | 27.5727 | 576,967 |
| | | | | | | Net Chg | 18.94 | 79.75% |

| | Date | Last Price | Volume | | Date | Last Price | Volume | | Date | Last Price | Volume |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Fr | 01/29/21 | 42.69 | 692,655 | Fr | 01/08/21 | 36.96 | 795,851 | Fr | 12/18/20 | 28.52 | 1,040,783 |
| Th | 01/28/21 | 42.865 | 954,130 | Th | 01/07/21 | 37.02 | 653,526 | Th | 12/17/20 | 28.35 | 359,167 |
| We | 01/27/21 | 43.24 | 945,548 | We | 01/06/21 | 35.59 | 1,667,585 | We | 12/16/20 | 27.325 | 394,290 |
| Tu | 01/26/21 | 46.76 | 354,177 | Tu | 01/05/21 | 32.03 | 1,106,946 | Tu | 12/15/20 | 28.04 | 365,323 |
| Mo | 01/25/21 | 47.48 | 699,678 | Mo | 01/04/21 | 30.30 | 884,560 | Mo | 12/14/20 | 27.00 | 414,397 |
| | | | | | | | | | | | |
| Fr | 01/22/21 H | 47.51 | 440,153 | Fr | 01/01/21 | | | Fr | 12/11/20 | 26.56 | 221,679 |
| Th | 01/21/21 | 46.44 | 535,140 | Th | 12/31/20 | 29.30 | 451,563 | Th | 12/10/20 | 26.62 | 407,480 |
| We | 01/20/21 | 46.18 | 520,571 | We | 12/30/20 | 28.455 | 275,498 | We | 12/09/20 | 27.00 | 419,475 |
| Tu | 01/19/21 | 45.93 | 1,258,671 | Tu | 12/29/20 | 29.21 | 682,374 | Tu | 12/08/20 | 27.52 | 288,455 |
| Mo | 01/18/21 | | | Mo | 12/28/20 | 29.69 | | Mo | 12/07/20 | 27.75 | 366,133 |
| | | | | | | | | | | | |
| Fr | 01/15/21 | 45.855 | 647,981 | Fr | 12/25/20 | | | Fr | 12/04/20 | 28.16 | 426,364 |
| Th | 01/14/21 | 45.93 | 1,149,481 | Th | 12/24/20 | 28.63 | 124,797 | Th | 12/03/20 | 27.49 | 461,246 |
| We | 01/13/21 | 45.07 | 607,402 | We | 12/23/20 | 28.51 | 247,866 | We | 12/02/20 | 27.68 | 622,375 |
| Tu | 01/12/21 | 45.90 | 1,614,304 | Tu | 12/22/20 | 28.21 | 460,263 | Tu | 12/01/20 | 28.52 | 524,595 |
| Mo | 01/11/21 | 44.14 | 3,157,507 | Mo | 12/21/20 | 28.73 | 552,299 | Mo | 11/30/20 | 28.67 | 747,158 |

Australia 61 2 9777 8600 Brazil 5511 2395 9000 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 4565 8900     Singapore 65 6212 1000     U.S. 1 212 318 2000     Copyright 2023 Bloomberg Finance L.P.

**Print job sent to Adobe PDF. Run PSET<GO> for printing preferences.**

ODP Corp/The

| Range | 09/01/2020 | 01/29/2021 | Period | Daily | High | 47.51 on | 01/22/21 |
|---|---|---|---|---|---|---|---|
| Market | Last Price | Volume | Currency | USD | Low | 18.30 on | 09/29/20 |
| View | Price Table | | | | Average | 27.5727 | 576,967 |
| | | | | | Net Chg | 18.94 | 79.75% |

| Date | Last Price | Volume | | Date | Last Price | Volume | | Date | Last Price | Volume |
|---|---|---|---|---|---|---|---|---|---|---|
| Fr 11/27/20 | 29.24 | 181,909 | Fr 11/06/20 | 24.28 | 580,883 | Fr 10/16/20 | 22.40 | 209,656 |
| Th 11/26/20 | | | Th 11/05/20 | 24.90 | 1,250,364 | Th 10/15/20 | 22.38 | 268,620 |
| We 11/25/20 | 29.74 | 538,859 | We 11/04/20 | 21.04 | 301,062 | We 10/14/20 | 21.64 | 240,844 |
| Tu 11/24/20 | 30.16 | 632,272 | Tu 11/03/20 | 21.30 | 362,810 | Tu 10/13/20 | 21.92 | 336,906 |
| Mo 11/23/20 | 29.10 | 721,336 | Mo 11/02/20 | 20.18 | 363,121 | Mo 10/12/20 | 22.15 | 425,140 |
| | | | | | | | | |
| Fr 11/20/20 | 28.73 | 437,739 | Fr 10/30/20 | 19.50 | 482,240 | Fr 10/09/20 | 22.63 | 397,984 |
| Th 11/19/20 | 29.22 | 446,919 | Th 10/29/20 | 19.68 | 431,327 | Th 10/08/20 | 23.21 | 502,999 |
| We 11/18/20 | 29.43 | 1,160,597 | We 10/28/20 | 19.25 | 533,601 | We 10/07/20 | 22.75 | 617,488 |
| Tu 11/17/20 | 28.115 | 865,580 | Tu 10/27/20 | 20.88 | 614,685 | Tu 10/06/20 | 22.025 | 635,554 |
| Mo 11/16/20 | 27.18 | 679,055 | Mo 10/26/20 | 21.49 | 502,284 | Mo 10/05/20 | 22.14 | 334,214 |
| | | | | | | | | |
| Fr 11/13/20 | 25.34 | 350,380 | Fr 10/23/20 | 22.29 | 387,573 | Fr 10/02/20 | 20.58 | 450,887 |
| Th 11/12/20 | 24.11 | 393,427 | Th 10/22/20 | 22.17 | 400,497 | Th 10/01/20 | 20.21 | 371,122 |
| We 11/11/20 | 25.18 | 252,846 | We 10/21/20 | 21.94 | 396,092 | We 09/30/20 | 19.45 | 614,266 |
| Tu 11/10/20 | 25.66 | 473,483 | Tu 10/20/20 | 21.75 | 389,269 | Tu 09/29/20 L | 18.30 | 374,000 |
| Mo 11/09/20 | 24.49 | 809,053 | Mo 10/19/20 | 21.45 | 423,262 | Mo 09/28/20 | 18.45 | 376,223 |

SN 3083959 EDT  GMT-4:00 G404-4816-173 21-Jun-2023 09:32:54

Print job sent to Adobe PDF. Run PSET<GO> for printing preferences.



| ODP US Equity | Export | Settings | | | | | | | Page 3/3 | Historical Price Table |

ODP Corp/The

| | | | High | 47.51 on | 01/22/21 |
|---|---|---|---|---|---|
| Range | 09/01/2020 - 01/29/2021 | Period Daily | Low | 18.30 on | 09/29/20 |
| Market | Last Price / Volume | Currency USD | Average | 27.5727 | 576,967 |
| View | Price Table | | Net Chg | 18.94 | 79.75% |

| Date | Last Price | Volume | Date | Last Price | Volume | Date | Last Price | Volume |
|---|---|---|---|---|---|---|---|---|
| Fr 09/25/20 | 18.31 | 414,392 | Fr 09/04/20 | 22.69 | 502,664 | | | |
| Th 09/24/20 | 18.62 | 605,790 | Th 09/03/20 | 23.04 | 733,289 | | | |
| We 09/23/20 | 19.21 | 837,132 | We 09/02/20 | 23.72 | 385,465 | | | |
| Tu 09/22/20 | 20.74 | 330,374 | Tu 09/01/20 | 23.75 | 514,322 | | | |
| Mo 09/21/20 | 20.58 | 660,667 | | | | | | |
| | | | | | | | | |
| Fr 09/18/20 | 21.62 | 1,027,723 | | | | | | |
| Th 09/17/20 | 21.72 | 299,025 | | | | | | |
| We 09/16/20 | 21.53 | 380,611 | | | | | | |
| Tu 09/15/20 | 21.22 | 316,555 | | | | | | |
| Mo 09/14/20 | 21.25 | 572,337 | | | | | | |
| | | | | | | | | |
| Fr 09/11/20 | 21.25 | 484,479 | | | | | | |
| Th 09/10/20 | 21.89 | 421,599 | | | | | | |
| We 09/09/20 | 22.56 | 434,037 | | | | | | |
| Tu 09/08/20 | 22.00 | 701,866 | | | | | | |
| Mo 09/07/20 | | | | | | | | |

SN 3083959 EDT  GMT-4:00 G404-4816-173 21-Jun-2023 09:32:54

Australia 61 2 9777 8600 Brazil 5511 2395 9000 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 4565 8900     Singapore 65 6212 1000     U.S. 1 212 318 2000     Copyright 2023 Bloomberg Finance L.P.

| ODP US Equity | Export | Settings | | | Page 1/3   Historical Price Table |
|---|---|---|---|---|---|

ODP Corp/The

| | | | | | High | 47.51 on | 01/22/21 |
|---|---|---|---|---|---|---|---|
| Range | 09/01/2020 | - | 01/29/2021 | Period Daily | Low | 18.30 on | 09/29/20 |
| Market | Last Price | | Tot Call Vol | Currency USD | Average | 27.5727 | 341 |
| View | Price Table | | | | Net Chg | 18.94 | 79.75% |

| | Date | Last Price | Tot Call Vol | | Date | Last Price | Tot Call Vol | | Date | Last Price | Tot Call Vol |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Fr | 01/29/21 | 42.69 | 197 | Fr | 01/08/21 | 36.96 | 1,012 | Fr | 12/18/20 | 28.52 | 159 |
| Th | 01/28/21 | 42.865 | 274 | Th | 01/07/21 | 37.02 | 801 | Th | 12/17/20 | 28.35 | 49 |
| We | 01/27/21 | 43.24 | 47 | We | 01/06/21 | 35.59 | 1,836 | We | 12/16/20 | 27.325 | 461 |
| Tu | 01/26/21 | 46.76 | 91 | Tu | 01/05/21 | 32.03 | 3,255 | Tu | 12/15/20 | 28.04 | 14 |
| Mo | 01/25/21 | 47.48 | 94 | Mo | 01/04/21 | 30.30 | 1,752 | Mo | 12/14/20 | 27.00 | 104 |
| | | | | | | | | | | | |
| Fr | 01/22/21 H | 47.51 | 98 | Fr | 01/01/21 | | | Fr | 12/11/20 | 26.56 | 82 |
| Th | 01/21/21 | 46.44 | 1,295 | Th | 12/31/20 | 29.30 | 49 | Th | 12/10/20 | 26.62 | 68 |
| We | 01/20/21 | 46.18 | 157 | We | 12/30/20 | 28.455 | 6 | We | 12/09/20 | 27.00 | 17 |
| Tu | 01/19/21 | 45.93 | 500 | Tu | 12/29/20 | 29.21 | 22 | Tu | 12/08/20 | 27.52 | 140 |
| Mo | 01/18/21 | | | Mo | 12/28/20 | 29.69 | 416 | Mo | 12/07/20 | 27.75 | 202 |
| | | | | | | | | | | | |
| Fr | 01/15/21 | 45.855 | 249 | Fr | 12/25/20 | | | Fr | 12/04/20 | 28.16 | 66 |
| Th | 01/14/21 | 45.93 | 606 | Th | 12/24/20 | 28.63 | 31 | Th | 12/03/20 | 27.49 | 126 |
| We | 01/13/21 | 45.07 | 335 | We | 12/23/20 | 28.51 | 220 | We | 12/02/20 | 27.68 | 145 |
| Tu | 01/12/21 | 45.90 | 769 | Tu | 12/22/20 | 28.21 | 16 | Tu | 12/01/20 | 28.52 | 29 |
| Mo | 01/11/21 | 44.14 | 3,846 | Mo | 12/21/20 | 28.73 | 185 | Mo | 11/30/20 | 28.67 | 31 |

SN 3083959 EDT  GMT-4:00 G404-4816-173 21-Jun-2023 09:34:33

Australia 61 2 9777 8600 Brazil 5511 2395 9000 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 4565 8900      Singapore 65 6212 1000      U.S. 1 212 318 2000      Copyright 2023 Bloomberg Finance L.P.

Print job sent to Adobe PDF. Run PSET<GO> for printing preferences.

| ODP US Equity | Export | Settings | | | | | | Page 2/3 | Historical Price Table |

ODP Corp/The

| Range | 09/01/2020 | - | 01/29/2021 | Period | Daily | High | 47.51 on | 01/22/21 |
| Market | Last Price | | Tot Call Vol | Currency | USD | Low | 18.30 on | 09/29/20 |
| View | Price Table | | | | | Average | 27.5727 | 341 |
| | | | | | | Net Chg | 18.94 | 79.75% |

| Date | Last Price | Tot Call Vol | Date | Last Price | Tot Call Vol | Date | Last Price | Tot Call Vol |
|---|---|---|---|---|---|---|---|---|
| Fr 11/27/20 | 29.24 | 19 | Fr 11/06/20 | 24.28 | 125 | Fr 10/16/20 | 22.40 | 67 |
| Th 11/26/20 | | | Th 11/05/20 | 24.90 | 494 | Th 10/15/20 | 22.38 | 473 |
| We 11/25/20 | 29.74 | 35 | We 11/04/20 | 21.04 | 187 | We 10/14/20 | 21.64 | 20 |
| Tu 11/24/20 | 30.16 | 80 | Tu 11/03/20 | 21.30 | 35 | Tu 10/13/20 | 21.92 | 22 |
| Mo 11/23/20 | 29.10 | 45 | Mo 11/02/20 | 20.18 | 23 | Mo 10/12/20 | 22.15 | 59 |
| | | | | | | | | |
| Fr 11/20/20 | 28.73 | 104 | Fr 10/30/20 | 19.50 | 67 | Fr 10/09/20 | 22.63 | 611 |
| Th 11/19/20 | 29.22 | 181 | Th 10/29/20 | 19.68 | 136 | Th 10/08/20 | 23.21 | 107 |
| We 11/18/20 | 29.43 | 1,121 | We 10/28/20 | 19.25 | 37 | We 10/07/20 | 22.75 | 504 |
| Tu 11/17/20 | 28.115 | 292 | Tu 10/27/20 | 20.88 | 52 | Tu 10/06/20 | 22.025 | 93 |
| Mo 11/16/20 | 27.18 | 401 | Mo 10/26/20 | 21.49 | 2,272 | Mo 10/05/20 | 22.14 | 114 |
| | | | | | | | | |
| Fr 11/13/20 | 25.34 | 61 | Fr 10/23/20 | 22.29 | 63 | Fr 10/02/20 | 20.58 | 112 |
| Th 11/12/20 | 24.11 | 87 | Th 10/22/20 | 22.17 | 581 | Th 10/01/20 | 20.21 | 40 |
| We 11/11/20 | 25.18 | 33 | We 10/21/20 | 21.94 | 1,150 | We 09/30/20 | 19.45 | 246 |
| Tu 11/10/20 | 25.66 | 422 | Tu 10/20/20 | 21.75 | 1,887 | Tu 09/29/20 L | 18.30 | 62 |
| Mo 11/09/20 | 24.49 | 264 | Mo 10/19/20 | 21.45 | 119 | Mo 09/28/20 | 18.45 | 76 |

SN 3083959 EDT  GMT-4:00 G404-4816-173 21-Jun-2023 09:34:43

Australia 61 2 9777 8600 Brazil 5511 2395 9000 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 4565 8900     Singapore 65 6212 1000     U.S. 1 212 318 2000     Copyright 2023 Bloomberg Finance L.P.

Print job sent to Adobe PDF. Run PSET<GO> for printing preferences.

| ODP US Equity | Export | Settings | | | Page 3/3 | Historical Price Table |

ODP Corp/The

| Range | 09/01/2020 | - | 01/29/2021 | Period | Daily | High | 47.51 on | 01/22/21 |
| Market | Last Price | Tot Call Vol | Currency | USD | Low | 18.30 on | 09/29/20 |
| View | Price Table | | | | Average | 27.5727 | 341 |
| | | | | | Net Chg | 18.94 | 79.75% |

| | Date | Last Price | Tot Call Vol | | Date | Last Price | Tot Call Vol | Date | Last Price | Tot Call Vol |
|---|---|---|---|---|---|---|---|---|---|---|
| Fr | 09/25/20 | 18.31 | 90 | Fr | 09/04/20 | 22.69 | 680 | | | |
| Th | 09/24/20 | 18.62 | 366 | Th | 09/03/20 | 23.04 | 88 | | | |
| We | 09/23/20 | 19.21 | 66 | We | 09/02/20 | 23.72 | 72 | | | |
| Tu | 09/22/20 | 20.74 | 97 | Tu | 09/01/20 | 23.75 | 28 | | | |
| Mo | 09/21/20 | 20.58 | 202 | | | | | | | |
| | | | | | | | | | | |
| Fr | 09/18/20 | 21.62 | 174 | | | | | | | |
| Th | 09/17/20 | 21.72 | 75 | | | | | | | |
| We | 09/16/20 | 21.53 | 203 | | | | | | | |
| Tu | 09/15/20 | 21.22 | 233 | | | | | | | |
| Mo | 09/14/20 | 21.25 | 105 | | | | | | | |
| | | | | | | | | | | |
| Fr | 09/11/20 | 21.25 | 135 | | | | | | | |
| Th | 09/10/20 | 21.89 | 23 | | | | | | | |
| We | 09/09/20 | 22.56 | 8 | | | | | | | |
| Tu | 09/08/20 | 22.00 | 31 | | | | | | | |
| Mo | 09/07/20 | | | | | | | | | |

SN 3083959 EDT  GMT-4:00 G404-4816-173 21-Jun-2023 09:34:43

Australia 61 2 9777 8600 Brazil 5511 2395 9000 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 4565 8900     Singapore 65 6212 1000     U.S. 1 212 318 2000     Copyright 2023 Bloomberg Finance L.P.

# EXHIBIT 7

Messages - Brandon Charnas

Will try

Or anyone at redmile or verily

We can discuss later



Is this you?

Ha

No

Haha

Are you on Instagram

Don't see it

Just accepted you

I'm barely active

Lol

See you at 1

👍

Who we eating w btw?

going to meet us

Office Depot

Good

12/23/20, 1:00 PM

I may be 10 late or so sorry

# EXHIBIT 8

Messages - Brandon Charnas & ████████████

iMessage
12/22/20, 10:37 PM

Brandon Charnas

████ pls connect with ████████

Brandon Charnas

Re ████ and ODP

12/23/20, 2:28 PM

████ here. ████████████

1/11/21, 10:15 AM

████████

You're welcome boyz

████████

U the man

2/23/21, 6:07 PM



████████

Wow ████████ moving markets!

Brandon Charnas

Wow

████████

Haha love it
Great lunch today

Hahahaha

Brandon Charnas

I'm dying

I'm in for tomorrow

████████

I'm buying shaq chairs for everyone if we close above 50 tmrw

Messages - Brandon Charnas & ███████████████

Laughed at "I'm buying shaq chairs for everyone if we close above 50 tmrw"

2/23/21, 10:39 PM

Brandon Charnas



Brandon Charnas

Lfg

2/24/21, 10:24 AM



# EXHIBIT 9

# FL-04276

*- Vol.*

*7/7/2023 10:04 AM*

**Full-size Transcript**

**Prepared by:**

LSS
FL-04276

Monday, July 17, 2023

1

```
 1    THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION

 2

 3    In the Matter of:              )

 4                                   )  File No.  FL-04276-A

 5    THE ODP CORPORATION            )

 6

 7    WITNESS:    ███████████████

 8    PAGES:    1 Through 118

 9    PLACE:    Securities and Exchange Commission

10              Miami Regional Office

11              801 Brickell Ave., Suite 1950

12              Miami, FL 33131

13    DATE:     Friday, July 7, 2023

14

15

16        The above entitled matter came on for hearing,

17    pursuant to notice, at 10:04 a.m.

18

19

20

21

22

23

24    ████████████████████████████████████████

25              ██████████████████████
```



1  ████████████████████████████████

2  ██████████████████████  ███████████

3  █████████████████████████████████

4  ██████████████  ███████████████████

5  ████████████████████████████████

6  ██████████████████  ████████████████

7  ████████████████████████

8  ████████

9           ██████████████████████

10 ██████████████████████████████████████

11 ████████████████  We spoke about some

12 of the things that Brandon alluded to, the fact that

13 he also hired an attorney and that he was going

14 through his communications, anything regarding ODP or

15 Office Depot or anything related to the case and the

16 extensive time that he's been taking on working on

17 that.  So we did speak a little bit more in detail or

18 in depth about what he was doing.  ██████████

19 ███████████████████████████

20      Q    So Brandon said that he was looking for the

21 communications that he had with other people

22 concerning Office Depot?

23      A    He acknowledged that he was reviewing all

24 communications that he had that that we were in his

25 availability on his cell phone or email or whatever

# EXHIBIT 10



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
801 BRICKELL AVENUE, SUITE 1950
MIAMI, FLORIDA 33131

MIAMI
REGIONAL OFFICE

**DIVISION OF ENFORCEMENT**

November 3, 2022

**VIA OVERNIGHT DELIVERY**

Brandon Charnas

███████████████

**Re: In the Matter of The ODP Corporation, FL-04276**

Dear Mr. Charnas:

The staff of the United States Securities and Exchange Commission is conducting an investigation in the matter identified above. The enclosed subpoena has been issued to you as part of this investigation. The subpoena requires you to provide us with documents and give sworn testimony.

Please read the subpoena and this letter carefully. This letter answers some questions you may have about the subpoena. You should also read the enclosed SEC Form 1662. If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena. Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment or both.

**Producing Documents**

*What materials do I have to produce?*

The subpoena requires you to provide us the documents described in the attachment to the subpoena. You must provide these documents by **November 24, 2022**. The attachment to the subpoena defines some terms (such as "document") before listing what you must provide.

You should produce each and every document in your possession, custody, or control, including any documents that are not in your immediate possession but that you have the ability to obtain. All responsive documents shall be produced as they are kept in the usual course of business, and shall be organized and labeled to correspond with the numbered paragraphs in the

subpoena attachment. In that regard, documents should be produced in a unitized manner, *i.e.*, delineated with staples or paper clips to identify the document boundaries.

Documents responsive to this subpoena may be in electronic or paper form. Electronic documents such as email should be produced in accordance with the attached document entitled SEC Data Delivery Standards (the "Standards"). If you have any questions concerning the production of documents in an electronic format, please contact me as soon as possible but in any event before producing documents. **All electronic documents responsive to the document subpoena, including all metadata, must also be secured and retained in their native software format and stored in a safe place.** The staff may later request or require that you produce the native format.

For documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy documents and produce them in an electronic format consistent with the Standards. Alternatively, you may send us photocopies of the documents in paper format. **If you choose to send copies, you must secure and retain the originals and store them in a safe place.** The staff may later request or require that you produce the originals.

Whether you scan or photocopy documents, the copies must be identical to the originals, including even faint marks or print. Also, please note that if copies of a document differ in any way, they are considered separate documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

If you do send us scanned or photocopied documents, please put an identifying notation on each page of each document to indicate that you produced it, and number the pages of all the documents submitted. (For example, if Jane Doe sends documents to the staff, she may number the pages JD-1, JD-2, JD-3, etc., in a blank corner of the documents.) Please make sure the notation and number do not conceal any writing or marking on the document. If you send us originals, please do not add any identifying notations.

In producing a photocopy of an original document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original document, photocopies of the original document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

*Do I need to send anything else?*

You should enclose a list briefly describing each item you send. The list should state to which numbered paragraph(s) in the subpoena attachment each item responds. A copy of the subpoena should be included with the documents that are produced.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to ENF-CPU@sec.gov, or in a separate cover letter mailed separately from the data. Password correspondence should reference case number, case name and requesting SEC staff member.

Please include a cover letter stating whether you believe you have met your obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us. Correspondence should reference case number, case name and requesting SEC staff member.

*What if I do not send everything described in the attachment to the subpoena?*

The subpoena requires you to send <u>all</u> the materials described in it. If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the subpoena, you should submit a list of what you are not producing. The list should describe each item separately, noting:

- its author(s);
- its date;
- its subject matter;
- the name of the person who has the item now, or the last person known to have it;
- the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
- the reason you did not produce the item; and
- the specific request in the subpoena to which the document relates.

If you withhold anything on the basis of a claim of attorney-client privilege or attorney work product protection, you should identify the attorney and client involved. If you withhold anything on the basis of the work product doctrine, you should also identify the litigation in anticipation of which the document was prepared.

If documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such documents and give the date on which they were lost, discarded or destroyed.

*Where should I send the materials?*

Please send the materials to:

ENF-CPU
U.S. Securities and Exchange Commission
14420 Albemarle Point Place, Suite 102
Chantilly, VA 20151-1750

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

3

Please also provide a duplicate copy of any document production cover letters to Drew D. Panahi at panahid@sec.gov and Michael J. Gonzalez at gonzalezmi@sec.gov. Additionally, please include the SEC matter number and the name of the requesting attorney when responding.

**Testifying**

*Where and when do I testify?*

The subpoena requires you to testify under oath in the matter identified on the subpoena via Video Teleconference on WebEx at **9:30am on November 17, 2022**.

A background questionnaire is also enclosed. During your testimony, the staff intends to ask background questions concerning, among other things, your residences, telephone numbers, education and employment. To expedite that part of the testimony, we request that you complete the enclosed questionnaire on a voluntary basis and provide it to the staff prior to your testimony.

**Other Important Information**

*May I have a lawyer help me respond to the subpoena?*

Yes. You have the right to consult with and be represented by your own lawyer in this matter. If you are represented by a lawyer when you testify, your lawyer may advise and accompany you when you testify. We cannot give you legal advice.

*What will the Commission do with the materials I send and/or the testimony I provide?*

The enclosed SEC Form 1662 explains how we may use the information you provide to the Commission. This form also has other important information for you. Please read it carefully.

*Has the Commission determined that anyone has done anything wrong?*

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation does not mean that we have concluded that anyone has violated the law. Also, the investigation does not mean that we have a negative opinion of any person, entity or security.

*Important Policy Concerning Settlements*

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

4

*I have read this letter, the subpoena, and the SEC Form 1662, but I still have questions. What should I do?*

If you have any other questions, you may call me at (305) 982-6316 or Michael J. Gonzalez, Senior Counsel, at (305) 982-6318. If you are represented by a lawyer, you should have your lawyer contact me.

Sincerely,

Drew D. Panahi
Senior Counsel
Division of Enforcement
(305) 982-6316
panahid@sec.gov

Enclosures:      Subpoena and Attachment
                  SEC Data Delivery Standards
                  SEC Form 1662
                  Background Questionnaire

5



# SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

### In the Matter of The ODP Corporation, FL-04276

**To:**   Brandon Charnas

---

☒   **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

ENF-CPU, U.S. Securities and Exchange Commission, 14420 Albemarle Point Place, Suite 102 Chantilly, VA 20151-1750, no later than November 24, 2022 at 10:00am.

---

☒   **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

Virtually via Video Teleconference on WebEx
November 17, 2022 at 9:30am.

---

### FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.
If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena.
Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.

By:   _Drew Panahi_                         Date:   November 3, 2022

Drew D. Panahi, Senior Counsel
U.S. Securities and Exchange Commission
Miami Regional Office
801 Brickell Avenue, Suite 1950
Miami, FL 33131

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.

**SUBPOENA ATTACHMENT FOR BRANDON CHARNAS**
In the Matter of The ODP Corporation, FL-04276

November 3, 2022

**Definitions**

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1.    "ODP Corporation" means the entity doing business under the name "ODP" a/k/a "Office Depot" including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2.    "Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

3.    A "Representative" of a Person means any present or former family members, officers, executives, partners, joint-venturers, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on behalf of the Person.

4.    "Charnas" means (i) Brandon Charnas, and/or (ii) any present or former representative of yours.

5.    "Charnas Accounts" means any financial institution account (foreign and domestic bank, credit card and brokerage accounts) in the name of, for the direct or indirect benefit of, or managed by Charnas.

6.    "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, facsimiles, messages of any type, telephone messages, text messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

7.    "Communication" means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

8.    "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, describing, analyzing or reflecting.

9.    An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement. A request for any

2

Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

10.   The term "Reviewed" means examined, assessed, considered, analyzed or evaluated.

11.   The term "you" and "your" means the Person to whom or entity to which this subpoena was issued.

12.   To the extent necessary to bring within the scope of this this subpoena any information or Documents that might otherwise be construed to be outside its scope:
    a.   the word "or" means "and/or";
    b.   the word "and" means "and/or";
    c.   the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;
    d.   the masculine gender includes the female gender and the female gender includes the masculine gender; and
    e.   the singular includes the plural and the plural includes the singular.

13.   "Relevant Period" means the time period beginning August 1, 2020, and continuing through the date of this subpoena, unless otherwise specified.

**Instructions**

1.   Unless otherwise specified, this subpoena calls for production of the original Documents and all copies and drafts of same. Documents responsive to this subpoena may be in electronic or paper form. Electronic Documents such as email should be produced in accordance with the attached Document entitled SEC Data Delivery Standards. All responsive electronic Documents, including all metadata, should also be produced in their native software format.

2.   For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards. Alternatively, you may send us photocopies of the Documents in paper format. If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place. The staff may later request or require that you produce the originals.

3.   Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print. Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.   In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

3

5.      Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request. In that regard, Documents should be produced in a unitized manner, i.e., delineated with staples or paper clips to identify the Document boundaries.

6.      Documents should be labeled with sequential numbering (bates-stamped).

7.      You must produce all Documents created during, or Concerning, the Relevant Period, unless otherwise specified.

8.      The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.      You are not required to produce exact duplicates of any Documents that have been previously produced to the Securities and Exchange Commission staff in connection with this matter. If you are not producing Documents based upon a prior production, please identify the responsive Documents that were previously produced.

10.     This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below. If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what you are not producing. The list should describe each item separately, noting:

      a.      its author(s);
      b.      its date;
      c.      its subject matter;
      d.      the name of the Person who has the item now, or the last Person known to have it;
      e.      the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
      f.      the basis upon which you are not producing the responsive Document;
      g.      the specific request in the subpoena to which the Document relates;
      h.      the attorney(s) and the client(s) involved; and
      i.      in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

11.     If Documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

## Documents to be Produced

1.      Documents sufficient to identify the Charnas Accounts;

2.      All account statements for all brokerage accounts (includes any account in which any trading of securities occurred) identified in Request #1, above;

3.      All Documents (including, but not limited to, correspondence, e-mails and notes of conversations) Concerning Communications between you and any Person Concerning "ODP" or "Office Depot";

4

4.      All Communications with any brokerage at which you had an account in Request # 2.

5.      All Documents Concerning trading in the securities of ODP;

6.      All credit card statements for credit cards that were or are in your name, and/or over which you have direct or indirect control;

7.      Documents sufficient to disclose all telephone numbers and calling card numbers in your name or which you regularly used during the Relevant Period, including, but not limited to, all telephone numbers at your residences (regardless of whose names they are listed under), all cell phone and facsimile numbers, and all work-related telephone numbers used by you;

8.      Documents sufficient to identify all e-mail, text messaging and instant messaging accounts you used, controlled, managed, maintained or opened at any time during the Relevant Period;

9.      All telephone bills and statements for all phone numbers identified in Request # 8 above.

## <u>BACKGROUND QUESTIONNAIRE</u>

**Please respond to the following questions. Answering these questions will reduce the amount of time spent on background information when you testify. You may use the space provided, attaching additional sheets as necessary, or supply the information in a separate document. If you would like an electronic version of this document, please contact us and we will provide you with one.**

Today's date: _____

1.  What is your full name?

2.  Have you ever been known by any other name? Yes _____   No _____
    If yes, list each such name and the period(s) in which you were known by that name.

3.  Date and place of birth?

4.  Country of citizenship?

5.  Marital Status?  Married ____   Divorced ____   Single ____

6.  List the names, ages, and occupations of your children, if any.

7.  List all residences you occupied at any time during the last three years, including vacation homes, beginning with your current residence.  For each residence, state the address, dates of residence, and all telephone numbers (including facsimile numbers) listed at that address.

ELECTRONIC COMMUNICATIONS ACCOUNTS

8.  List all telephone numbers and telecommunication services that were in your name or that you regularly used during the last 5 years. Include all residential business, cellular, credit

Background Questionnaire
Page 2

card, and VOIP numbers, and services such as Google Voice, Skype, and video conference services. For each telephone number, state the name of the corresponding carrier (e.g., AT&T, Verizon, Vonage, Skype, etc.).

9.  List the universal resource locator (URL) for all websites or blogs that you established or for which you had the authority to control content at any time during the last 5 years. For each website, state the name(s) of the domain name registrar (e.g. GoDaddy) through which the URL was obtained, the name(s) of all individuals or entities who provided web site hosting or design services, whether the website contained primarily business or personal information, and the time period in which it was active.

10. List all electronic mail addresses and social networking accounts (e.g.Facebook, LinkedIn, Twitter, Instagram, Flickr, Google+) that were in your name or that you regularly used at any time during the last 5 years. Include all personal, business, or shared electronic mail addresses and social networking accounts. For each electronic mail address and social networking account, state the name(s) of the corresponding internet service provider(s) (e.g. Google, Yahoo, AOL, or your employer), whether the address was used primarily for business or personal correspondence, and the time period in which it was active.

11. List all usernames for instant messaging and similar electronic communications services (including, but not limited to, Bloomberg, Skype, whatsapp), other than those listed in response to questions above, that were in your name or that you regularly used at any time during the last 5 years. Include all personal, business, and shared addresses. For each username, state the name(s) of the communication service provider (e.g. Google, AOL, etc.), whether the address was used primarily for business or personal correspondence, the time period in which it was active, and the name of the software application(s) (e.g. GTalk, ICQ, MSN Messenger) you used to access it.

Background Questionnaire
Page 3

12. List all internet message boards and discussion forums (including, but not limited to, Money Maker Group, PNQI Message Board, Investors Hub Daily) of which you were a member or on which you posted messages at any time during the last 5 years. For each message board or discussion forum, state the service provider and your member name or identification information.

PUBLICLY-HELD COMPANIES

13. Are you now, or have you ever been, an officer or director of any publicly-held company? Yes ____ No ____.

14. Are you now, or have you ever been, a beneficial owner, directly or indirectly, of five per cent or more of any class of equity securities of any publicly held company?  Yes ____   No ____.

PRIVATELY-HELD COMPANIES

15. Are you now, or have you ever been, a beneficial owner, directly or indirectly, of any privately-held company (i.e., corporation, partnership, limited liability company or other corporate form)?

16. Are you now, or have you ever been, a manager or a member of any privately-held company (i.e., corporation, partnership, limited liability company or other corporate form)?

SECURITIES ACCOUNTS

Background Questionnaire
Page 4

17. List all securities or brokerage accounts that you have held in your name, individually or jointly, at any time during the last 5 years.  Include all foreign accounts.  For each such account, identify: (i) the brokerage firm; (ii) the location of the branch where your account is or was held; (iii) your broker; (iv) the type of account (i.e., cash, margin or IRA); (v) the account number; and (vi) whether any person has ever held discretionary authority or power of attorney over the account; if so, name such person(s).

18. List all securities or brokerage accounts (including foreign accounts), other than those listed in your answer to the previous question, in which you had any direct or indirect beneficial interest at any time during the last 5 years.  For each such account, provide the information requested by the previous question.

19. List all securities or brokerage accounts (including foreign accounts), other than those listed in your answers to the two previous questions, over which you had any control at any time during the last 5 years.  For each such account, provide the information requested by the first question in this section.

BANK ACCOUNTS
20. List all accounts you have held in your name at any financial institution (i.e., bank, thrift, or credit union) at any time during the last 5 years.  Include all foreign accounts.  For each such account, identify: (i) the financial institution; (ii) the address of the branch at which your account is or was held; (iii) the type of account (i.e., checking, savings, money market or IRA); (iv) the account number; and (v) whether any person has ever had discretionary authority or power of attorney over the account; if so, name such person(s).

Background Questionnaire
Page 5

21. List all accounts at financial institutions (including foreign accounts), other than those listed
in your answer to the previous question, in which you had any direct or indirect beneficial
interest at any time during the last 5 years.  For each such account, provide the information
requested by the previous question.

22. List all accounts at financial institutions (including foreign accounts), other than those listed
in your answers to the two previous questions, over which you had any control at any time
during the last 5 years.  For each such account, provide the information requested by the first
question in this section.

23. List any other accounts (including foreign accounts), other than those listed in your answers
to the previous questions in this section, that were held in your name, in which you had any
direct or indirect beneficial interest, or over which you had any control, that you have used to
transfer funds during the last 5 years, including, but not limited to, PayPal accounts.  For
each such account, provide the information requested by the first question in this section.

PRIOR PROCEEDINGS
24. Have you ever testified in any proceeding conducted by the staff of the Securities and
Exchange Commission, a U.S. or foreign federal or state agency, a U.S. or foreign federal or
state court, a stock exchange, the Financial Industry Regulatory Authority ("FINRA") or any
other self-regulatory organization ("SRO"), or in any arbitration proceeding related to
securities transactions?

25. Have you ever been deposed in connection with any court proceeding? Yes ____ No ____.

Background Questionnaire
Page 6

26.  Have you ever been named as a defendant or respondent in any action or proceeding brought by the SEC, any other U.S. or foreign federal agency, a state securities agency, FINRA, an SRO, or any exchange?  Yes ____  No _____.

27. Have you ever been a defendant in any action (other than those listed in response to the previous question) alleging violations of the federal securities laws? Yes ____  No _____.

28. Have you ever been a defendant in any criminal proceeding other than one involving a minor traffic offense?  Yes ____  No _____.

EDUCATIONAL HISTORY
29. Provide the requested information about each educational institution that you have attended, beginning with the most recent and working backward to the date that you completed high school.

30. Other than courses taken in connection with institutions listed in response to question 29, list any securities, accounting or business related courses taken since high school.  For each such course, identify the date that the course was completed and the name of the institution or organization that offered the course.

PROFESSIONAL LICENSES/CLUBS
31. Do you hold, or have you ever held, any professional license?  Yes ____  No _____.

Background Questionnaire
Page 7

32. Are you, or have you ever been, a member of any professional or business club or organization?   Yes ____   No ____.

33. Are you, or have you been during the last 5 years, a member of any social clubs, charities or nonprofit organizations?   Yes ____   No ____.

<u>EMPLOYMENT HISTORY</u>

34. Are you, or have you ever been, an employee of a broker, dealer, investment adviser, investment company, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization?   Yes ____   No ____.

35. State your employment activities, beginning with the present and working backward to the date that you completed high school and attach a recent copy of your resume or curriculum vitae. For each position you have held (including multiple positions or titles with the same employer), provide the following information:

CONTINUE ON ADDITIONAL SHEETS IF NECESSARY



**U.S. Securities and Exchange Commission**

**Data Delivery Standards**

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC).   ***Any questions or proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission.***

General Instructions ................................................................................................................... 1

Delivery Formats ....................................................................................................................... 2

   I.  Imaged Productions .......................................................................................................... 3

      1.  Images .......................................................................................................................... 3

      2.  Image Cross-Reference File ........................................................................................ 3

      3.  Data File ...................................................................................................................... 3

      4.  Text .............................................................................................................................. 3

      5.  Linked Native Files ..................................................................................................... 3

   II.  Native File Productions without Load Files .................................................................... 4

   III.  Adobe PDF File Productions .......................................................................................... 4

   IV.  Audio Files ...................................................................................................................... 4

   V.  Video Files ...................................................................................................................... 4

   VI.  Electronic Trade and Bank Records ............................................................................... 4

   VII.  Electronic Phone Records ............................................................................................... 4

   VIII.  Audit Workpapers .......................................................................................................... 5

   IX.  Mobile Device Data ....................................................................................................... 5

**General Instructions**

Due to COVID-19 restrictions the current, temporary mailing address for all physical productions sent to the SEC is:
**ENF-CPU (U.S. Securities & Exchange Commission), 14420 Albemarle Point Place, Suite 102, Chantilly, VA 20151-1750**

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business.  For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. *(Note:  An Adobe PDF file is __not__ considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR)  during

the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF). If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name and file location and, 2) make that unique metadata part of your production to the SEC.

General requirements for **ALL** document productions are:

1. A cover letter must be included with each production and should include the following information:
   a. Case number, case name and requesting SEC staff member name
   b. A list of each piece of media included in the production with its unique production volume number
   c. A list of custodians, identifying the Bates range for each custodian
   d. The time zone in which the emails were standardized during conversion
   e. Whether the production contains native files produced from Mac operating system environments
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
   a. Case number
   b. Production date
   c. Producing party
   d. Bates range (if applicable)
3. All submissions must be organized by **custodian** unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one data load file and one image pointer file.
6. All load-ready text must be produced as separate document-level text files.
7. All load-ready collections should account for custodians in the custodian field.
8. All load-ready collections must provide the extracted contents of any container files to ensure all relevant files are produced as separate records.
9. Audio files should be separated from data files if both are included in the production.
10. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
11. All electronic productions submitted on media must be produced using industry standard self-extracting encryption software.
12. The SEC uses 7zip to access compressed files. Note that the SEC **cannot** accept files that use AES-256 Jpeg or pkAES-256-Cert Deflate compression methods, even if the files are created with 7zip. If you have any questions or need additional information, please reach out to the requesting SEC staff member.
13. Electronic productions of 20 GB or less are strongly encouraged to be submitted via Secure File Transfer. All Secure File Transfers should be sent to the SEC Centralized Production Unit (ENF-CPU@sec.gov) with a CC to the requesting SEC staff member. If you do not have your own Secure File Transfer application, you may reach out to the requesting SEC staff member for a link to the SEC system in order to upload your production. If using the SEC Secure File Transfer system, you will NOT be able to CC individuals outside the SEC on your upload transmission. Note that the SEC **cannot** accept productions made using file sharing sites such as Google Drive, Microsoft Office 365 or Dropbox.
14. Productions containing BSA or SAR material must be delivered on encrypted physical media. The SEC **cannot** accept electronic transmission of BSA or SAR material. Any BSA or SAR material produced should be segregated and appropriately marked as BSA or SAR material, or should be produced separately from other case related material.
15. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a cover letter apart from the media.
16. All electronic productions should be produced free of computer viruses.
17. Before producing forensically collected images, parties should reach out to the requesting SEC staff member in order to discuss appropriate handling.
18. Before producing unique data sets (large sets of relational data, website reconstruction, chat room data, etc.), parties should reach out to the requesting SEC staff member in order to discuss an appropriate production format.
19. Additional technical descriptions can be found in the addendum to this document.

2

U.S. Securities and Exchange Commission
Data Delivery Standards

**\*Please note that productions sent to the SEC via United States Postal Service are subject to Mail Irradiation, and as a result electronic productions may be damaged.\***

**Delivery Formats**

**I.   Imaged Productions**

The SEC prefers that all scanned paper and electronic file collections be produced in a structured format including industry standard load files, Bates numbered image files, native files and searchable document-level text files.

**1.   Images**
   a.   Black and white images must be 300 DPI Group IV single-page TIFF files
   b.   Color images must be produced in JPEG format
   c.   File names cannot contain embedded spaces or special characters (including the comma)
   d.   Folder names cannot contain embedded spaces or special characters (including the comma)
   e.   All image files must have a unique file name, i.e. Bates number
   f.   Images must be endorsed with sequential Bates numbers in the lower right corner of each image
   g.   The number of image files per folder should not exceed 2,000 files
   h.   Excel spreadsheets should have a placeholder image named by the Bates number of the file
   i.   AUTOCAD/photograph files should be produced as a single page JPEG file

**2.   Image Cross-Reference File**

The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:

   *ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

**3.   Data File**

The data file (.DAT) contains all of the fielded information that will be loaded into the database.

   a.   The first line of the .DAT file must be a header row identifying the field names
   b.   The .DAT file must use the following *Concordance®* default delimiters:

      Comma ¶ ASCII character (020)
      Quote þ ASCII character (254)

   c.   If the .DAT file is produced in Unicode format it must contain the byte order marker
   d.   Date fields should be provided in the format: mm/dd/yyyy
   e.   Date and time fields must be two separate fields
   f.   The time zone must be included in all time fields
   g.   If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments
   h.   An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media.  The text file must be named after the FIRSTBATES.  Do not include the text in the .DAT file.
   i.   For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.
   j.   BEGATTACH and ENDATTACH fields must be two separate fields
   k.   A complete list of metadata fields is available in **Addendum A** to this document

**4.   Text**

Text must be produced as separate document-level text files, not as fields within the .DAT file. The text files must be named per the FIRSTBATES/Image Key and the full path to the text file (OCRPATH) should be included in the .DAT file. Text files may be in either ANSI or Unicode format, however, ALL text files must be in the same format within the same production. Note that productions containing text with foreign characters must produce text files in Unicode format to preserve the foreign characters. Text files must be in a separate folder, and the number of text files per folder should not exceed 2,000 files. There should be no special characters (including commas) in the folder names. For redacted documents, provide the full text for the redacted version.

**5.   Linked Native Files**

Copies of original email and native file documents/attachments must be included for all electronic productions.

3

    a.    Native file documents must be named per the FIRSTBATES number
    b.    The full path of the native file must be provided in the .DAT file for the LINK field
    c.    The number of native files per folder should not exceed 2,000 files

## II. Native File Production without Load Files

With prior approval, native files may be produced without load files. The native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, native email files (.PST or .MBOX) may be produced. A separate folder should be provided for each custodian.

## III. Adobe PDF File Production

With prior approval, Adobe PDF files may be produced in native file format.

1. All PDFs must be unitized at the document level, i.e., each PDF must represent a discrete document.
2. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

## IV. Audio Files

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

1) Caller Name:        Caller's name or account/identification number
2) Originating Number:  Caller's phone number
3) Called Party Name:   Called party's name
4) Terminating Number: Called party's phone number
5) Date:               Date of call
6) Time:               Time of call
7) Filename:           Filename of audio file

## V. Video Files

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

## VI. Electronic Trade and Bank Records

When producing electronic trade records, bank records, or financial statements, provide the files in one of the following formats:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

## VII. Electronic Phone Records

When producing electronic phone records, provide the files in the following format:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details. Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).
   a. The metadata that must be included is outlined in **Addendum B** of this document. Each field of data must be loaded into a separate column. For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information. Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

5

**VIII. Audit Workpapers**

    The SEC prefers for workpapers to be produced in two formats: (1) With Bates numbers in accordance with the SEC Data Delivery Standards; and (2) in native format or if proprietary software was used, on a standalone laptop with the appropriate software loaded so that the workpapers may be reviewed as they would have been maintained in the ordinary course of business. The laptop must have printing capability, and when possible, the laptop should be configured to enable a Virtual Machine (VM) environment.

**IX. Mobile Device Data**

    Before producing mobile device data (including but not limited to text messages) parties should reach out to the requesting SEC staff member in order to discuss the appropriate production format

## ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided<br>Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |

Rev 8/2021

| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |
|---|---|---|
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |
| MIME_TYPE | application/msword | The content type of an email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the email or native file document; will vary depending on the format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| LAST_AUTHOR | Jane Doe | Email: (empty)<br>Native: Last Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |
| TIME_CREATED/TIME_ZONE | 10:25 AM GMT | Email: (empty)<br>Native: Time the document was created including time zone<br>**This data must be a separate field and cannot be |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last modified including the time zone<br>**This data must be a separate field and cannot be |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last accessed including the time zone<br>**This data must be a separate field and cannot be |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |

8

| | | |
|---|---|---|
| HEADER | Return-Path: <example_from@dc.edu> X-SpamCatcher-Score:1[X] Received:from[136.167.40.119] (HELO dc.edu) by fe3.dc.edu (CommuniGate Pro SMTP4.1.8) with ESMTP-TLS id 61258719 for example_to@mail.dc.edu; Mon, 23 Aug 2004 11:40:10 -0400 Message-ID: <4129F3CA.2020509@dc.edu> Date: Mon, 23 Aug 2005 11:40:36 -400 From: Taylor Evans <example_from@dc.edu> User-Agent:Mozilla/5.0 (Windows;U; Windows NT 5.1; en-US;rv:1.0.1) Gecko/20020823 Netscape/7.0 X-Accept-Language:en-us,en MIME-Version:1.0 To: Jon Smith <example_to@mail.dc.edu> Subject:Business Development Meeting Content-Type: text/plain;charset=us-ascii; format=flowed Content-Transfer-Encoding:7bit | Email: The email header information Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a069 8aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Cross-Reference File:

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000004.TIF,Y,,,
IMG0000005,,E:\001\IMG0000005.TIF,Y,,,
IMG0000006,,E:\001\IMG0000006.TIF,,,,
```

## **ADDENDUM B**

For Electronic Phone Records, include the following fields in separate columns:
For Calls:
1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable


For Text messages:
1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable

For Mobile Data Usage:
1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena

### A. False Statements and Documents

Section 1001 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

[W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
(2) makes any materially false, fictitious, or fraudulent statement or representation; or
(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

Section 1519 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . ., or in relation to or contemplation of any such matter.

### B. Testimony

If your testimony is taken, you should be aware of the following:

1. *Record*. Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel*. You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability*. Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however*, That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury*. Section 1621 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

Whoever--

(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true.

5.   *Fifth Amendment and Voluntary Testimony*. Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.   *Formal Order Availability*. If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C.  Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D.  Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

### E. Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena*. The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily*. One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F. Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena*. If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, Section 21(c) of the Securities Exchange Act of 1934, Section 42(c) of the Investment Company Act of 1940, and Section 209(c) of the Investment Advisers Act of 1940 provide that fines and terms of imprisonment may be imposed upon any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena.

*Persons Requested to Supply Information Voluntarily*. There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G. Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H. Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (1) the SEC suspects or has confirmed that there has been a breach of the system of records, (2) the SEC has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the SEC (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm.

2. To other Federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the Federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the Federal securities laws.

5. In any proceeding where the Federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other Federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a Federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a Federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the Federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 through 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100 through 1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the Federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 through 200.735-18, and who assists in the investigation by the Commission of possible violations of the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the Federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the Federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, Federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

23. To another Federal agency or Federal entity, when the SEC determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach.

* * * * *

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
801 BRICKELL AVENUE, SUITE 1950
MIAMI, FLORIDA 33131

MIAMI
REGIONAL OFFICE

**DIVISION OF ENFORCEMENT**

Drew D. Panahi
Senior Counsel
305 982-6316
panahid@sec.gov

November 3, 2022

**<u>VIA OVERNIGHT DELIVERY</u>**

Brandon Charnas

███████████

**Re: In the Matter of The ODP Corporation, FL-04276**

Dear Mr. Charnas:

We believe you may possess documents and data, referred to in this letter as "Evidence," relevant to an ongoing investigation being conducted by the staff of the United States Securities and Exchange Commission. Accordingly, we hereby provide notice that such Evidence should be reasonably preserved and retained until further notice. Failure to do so could give rise to civil and criminal liability.

The Commission considers potentially relevant Evidence to include documents and data created on or after August 1, 2020, that:

(1)      were created, modified, or accessed by you, including any present or former representative; and

(2)      relate or refer to the following transactions or topics, or include the following terms:

- The ODP Corporation (Ticker symbol "ODP"), which means the entity doing business under the name "ODP" a/k/a "Office Depot" including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business

names used by any of the foregoing;

- trading in the securities of ODP;

- USR Parent, Inc., which means the entity doing business under the name "Staples, Inc." a/k/a "Staples" including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing; and

- Sycamore Partners which means the entity doing business under the name "Sycamore Partners" including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

Such Evidence includes both "hard copy" and electronically-stored information in your possession, custody or control, including: text files, data compilations, word processing documents, spreadsheets, e-mail, voicemail, databases, calendars and scheduling information, logs, file fragments and backup files, letters, instant messages, memoranda, notes, drawings, designs, and correspondence or communications of any kind. Evidence that is stored electronically may be maintained on shared network files, computer hard drives, servers, DVDs, CD-ROMs, flash drives, thumb drives, laptops, digital recorders, netbooks, PDAs, smartphones, or other handheld devices, as well as in cloud or other remote data storage or processing services.

<u>You have a duty to reasonably preserve and retain such Evidence.</u>

<u>This duty includes an obligation to provide notice</u> to all employees or custodians who may be in possession of Evidence. This duty also extends to the preservation and retention of Evidence in the possession or custody of third-parties, such as a provider of cloud computing or other remote data storage or processing services, or an internet service provider, cloud computing provider, or social media platforms such Facebook, LinkedIn, or Twitter, if such Evidence is within your control.

<u>You may need to act affirmatively to prevent the destruction of Evidence.</u> This duty may necessitate quarantining certain Evidence to avoid its destruction or alteration. You should consider whether you need to discontinue the routine destruction of Evidence, including discontinuing the recycling of backup tapes or other storage media, and the deletion of emails, "trash," "recycling," "drafts," "sent," or "archived" folders. You should avoid running or installing any drive cleaning, wiping, encrypting, or defragmenting software on electronic devices that may contain Evidence.

You should not alter or damage any forensically recoverable data. Any attempt to replicate electronic data without adhering to best practices for data replication could compromise the integrity or contents of such data.

You should consider preserving any forensically recoverable data by having mirror image copes of devices made or by forensically preserving data stored in the cloud or other remote computing service. Simply making "hard copies" of such Evidence or transforming it to other formats (such as TIFF or PDF documents) does not constitute preservation of forensic data. We are prepared to discuss with you proper protocols for replication before you attempt to copy Evidence. The Commission may be able to retain and supervise computer forensic resources to properly and non-invasively create back-up images of Evidence.

While we recognize that this may impose a burden on you, it is absolutely necessary that you fully comply with your obligations to reasonably retain and preserve Evidence. We appreciate your efforts in this regard.

Please contact me if you have any questions, or to meet-and-confer about the matters discussed above.

Sincerely,

_____
Drew D. Panahi
Senior Counsel
Division of Enforcement

# EXHIBIT 11



Department of State  /  Division of Corporations  /  Search Records  /  Search by Entity Name  /

# Detail by Entity Name

Florida Limited Liability Company
CURRENT REAL ESTATE ADVISORS FL, LLC

**Filing Information**

| | |
|---|---|
| **Document Number** | L22000231925 |
| **FEI/EIN Number** | 88-2674187 |
| **Date Filed** | 05/27/2022 |
| **State** | FL |
| **Status** | ACTIVE |
| **Last Event** | LC AMENDMENT |
| **Event Date Filed** | 06/14/2022 |
| **Event Effective Date** | NONE |

**Principal Address**

523 NW 26TH ST
MIAMI, FL 33127

**Mailing Address**

523 NW 26TH ST
MIAMI, FL 33127

**Registered Agent Name & Address**

CAPITOL CORPORATE SERVICES, INC.

515 E PARK AVE 2ND FLOOR

TALLAHASSEE, FL 32301

**Authorized Person(s) Detail**

**Name & Address**

Title MGR

HENICK, ADAM

270 LAFAYETTE ST STE 1205

NEW YORK, NY 10012

Title MGR

CHARNAS, BRANDON

270 LAFAYETTE ST STE 1205

NEW YORK, NY 10012

Title VP

SNYDER, DONALD A

523 NW 26 ST

MIAMI, FL 33127

**Annual Reports**

| Report Year | Filed Date |
|---|---|
| 2023 | 02/28/2023 |

## Document Images

| | |
|---|---|
| 02/28/2023 -- ANNUAL REPORT | View image in PDF format |
| 06/14/2022 -- LC Amendment | View image in PDF format |
| 05/27/2022 -- Florida Limited Liability | View image in PDF format |