UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 23-mc-22764-BLOOM/Otazo-Reyes**

SECURITIES AND EXCHANGE COMMISION,

      Plaintiff,

v.

BRANDON CHARNAS,

      Defendant.

_____/

**ORDER AFFIRMING ORDER DENYING SECURITY AND EXCHANGE
COMMISSION'S APPLICATION FOR AN ORDER REQUIRING COMPLIANCE
WITH ADMINISTRATIVE SUBPOENA**

**THIS CAUSE** is before the Court upon the Security and Exchange Commission's

("Commission") Appeal of the Magistrate Judge's Order Denying its Application for an Order

Requiring Compliance with Administrative Subpoena, ECF No. [34] ("Appeal"). Defendant

Brandon Charnas ("Charnas") filed a Response in Opposition, ECF No. [38]. The Court has

carefully reviewed the Appeal, the Response, the record in this case, the applicable law, and is

otherwise fully advised. For the reasons set forth below, the Commission's Appeal is dismissed.

**I.   BACKGROUND**

The Commission filed an Application for an Order to Show Cause and for an Order

Requiring Compliance with Administrative Subpoena on July 25, 2023. ECF No. [1]

("Application"). The Commission is investigating Charnas for potential insider trading in

connection with Office Depot's acquisition by Staples. *See generally* ECF No. [1]. The

Commission alleges Charnas traded securities of Office Depot based on material non-public

information related to this acquisition in 2020-2021. *Id.* On August 2, 2023, the Court referred the

Application to Magistrate Judge Alicia M. Otazo-Reyes for disposition. *See* ECF No. [6].

### A. Procedural History

Judge Otazo-Reyes held an Initial Show Cause Hearing on August 23, 2023. *See* ECF No. [15]. The Commission agreed to revise the initial Administrative Subpoena to narrow its scope during the hearing. ECF No. [30] at 2. Judge Otazo-Reyes also requested *in camera* submissions of redacted exhibits provided with the Application, namely, two unredacted text message exchanges between Charnas and unidentified traders, ECF No. [1-2] 49-50, 51-54, and an unredacted excerpt of the deposition testimony of "Trader 6".[1] The Commission was also permitted to supplement the record *in camera* with additional text messages between Charnas and "others relevant to the investigation[,]" as well as Charnas's AT&T toll records. ECF No. [34] at 4.

On August 28, 2023, the Commission served Charnas with a revised subpoena seeking the following information:

> The "Relevant Period" for Revised Request No. 3-A is August 1, 2020 through February 28, 2021.
>
> Provide all text messages, iMessages, and WhatsApp messages (collectively "Cell phone Messages") sent or received during the Relevant Period containing any of the following words or terms regardless of capitalization: "ODP," "Office Depot," "███," "███," "tip," "tips," "insider," "insiders," "███," "$40," "$50," "shares," "share," "calls," "puts," "option," "options," "out of the money," "out-of-the-money," "███," "spin-off," "spinoff," "merger," "acquisition," "M&A," "MandA," "takeout," "take-out," "███," "data room," "███," "Staples," "███," "bid," "offer," "███," "███," "███," "███," "███," "███," "███," "███," "███," "███," "███," "███," "███," or "███," including the 10 Cell phone Messages that precede and the 20 Cell phone Messages that succeed each of the Cell phone Messages containing any of the preceding search terms.

---

[1] The Commission references six unidentified individuals being investigated along with Charnas as follows: "Trader 1"; "Trader 2"; "Trader 3"; "Trader 4"; "Individual 5"; and "Trader 6". The Court adopts this naming convention for clarity.

ECF No. [22-1] ("Revised Subpoena").[2]

Charnas did not respond to the Revised Subpoena. Instead, he invoked the Fifth Amendment, contending that responding to the Revised Subpoena would violate his right against self-incrimination.[3] The Commission argues Charnas must respond to the Revised Subpoena despite his invocation of the Fifth Amendment because any documents produced in response to the Revised Subpoena would be non-testimonial in nature. The Commission contends the Revised Subpoena satisfies both exceptions to the Fifth Amendment's act of production doctrine because the Revised Subpoena does not require a response that is testimonial in nature, and because it has shown that it already knows the general contents of the requested documents, thereby rendering any testimonial aspect in their production a foregone conclusion.

Judge Otazo-Reyes held a Continued Show Cause Hearing on September 26, 2023, ECF No. [28]. Judge Otazo-Reyes elected to issue a separate order rather than rule on the Revised Subpoena during the hearing. *See generally* ECF No. [33].

**B.  Order**

Judge Otazo-Reyes issued an Order denying the Commission's Application on October 11, 2023. ECF No. [30] ("Order"). As explained in the Order, "the act of production may have some testimonial quality sufficient to trigger Fifth Amendment protection when the production explicitly or implicitly conveys some statement of fact." *Id.* at 3 (quoting *In re Grand Jury Subpoena Duces*

---

[2] The Commission filed a redacted version of the Revised Subpoena to protect the names of certain individuals and entities due to pending investigations. The Commission also filed an unredacted version under seal, ECF No. [29].

[3] Charnas also invoked the Fourth Amendment's protection against unreasonable searches and seizures. Judge Otazo-Reyes did not address Charnas's Fourth Amendment arguments in light of her conclusion that the Fifth Amendment protects Charnas from responding to the Revised Subpoena. The Court also does not address Charnas's Fourth Amendment arguments here because it concludes Judge Otazo-Reyes's decision that the Fifth Amendment's protections apply is neither clearly erroneous nor contrary to law.

*Tecum Dated March 25, 2011*, 670 F.3d 1335, 1342 (11th Cir. 2012)). "Specifically, an act of production 'could qualify as testimonial if conceding the existence, possession and control, and authenticity of the documents tended to incriminate' the producing party." *Id.* (quoting *In re Grand Jury Subpoena*, 670 F.3d at 1343).

In this context, an act of production is non-testimonial in one of two ways. The first occurs "where the individual is not called upon to make use of the contents of his or her mind [such as when] turning over the key of a strongbox containing documents" and this rationale has been used "in a variety of other contexts." *In re Grand Jury* Subpoena, 670 F.3d at 1345. Second,

> under the "foregone conclusion" doctrine, [where] an act of production is not testimonial—even if the act conveys a fact regarding the existence or location, possession, or authenticity of the subpoenaed materials—if the Government can show with "reasonable particularity" that, at the time it sought to compel the act of production, it already knew of the materials, thereby making any testimonial aspect a "foregone conclusion."

*Id.* at 1345-46. "Case law from the Supreme Court does not demand that the Government identify exactly the documents it seeks, but it does require some specificity in its requests—categorical requests for documents the Government anticipates are likely to exist simply will not suffice." *Id.* at 1347.

Judge Otazo-Reyes found that the text messages sought in the Revised Subpoena are testimonial in nature because Charnas would necessarily use the contents of his own mind to produce them. The Order explained:

> If Charnas were to conduct his own search of his cell phone or other devices in his possession capable of storing "Cell Phone Messages", he would need to use the contents of his mind to: identify which device or devices contain the Cell Phone Messages; enter the search terms in the particular device; apply the "Relevant Period" constraints to the search; and add ten preceding and twenty succeeding "Cell Phone Messages" to the results of the initial search, so as to fully comply with the Revised Subpoena. In the alternative, the Commission proposes that Charnas' counsel or an IT vendor conduct the required search, so that Charnas would not have to use the contents of his mind. However, in that scenario, Charnas' mental

involvement in responding to the Revised Subpoena would still be required in order to, at a minimum: locate his cell phone or other devices in his possession capable of storing "Cell Phone Messages"; and review the results of the search for responsiveness and for potential privilege claims, in which task he must necessarily participate even if his counsel or an IT vendor were to conduct the search.

ECF No. [30] at 4-5 (footnote call number omitted). The Order rejected the Commission's argument that the Revised Subpoena simply calls for a mechanical, non-testimonial production of those text messages and distinguished the authorities on which it relied. *See id.* at 5-6.

The Order also found the Commission failed to demonstrate the Revised Subpoena satisfies the foregone conclusion exception. Judge Otazo-Reyes discussed the evidence supplied by the Commission detailed above. The Order noted the Commission's acknowledgment "that the text messages already in its possession covered only some but not all of the individuals and subject matters listed in the search terms of the Revised Subpoena." *Id.* at 7. Judge Otazo-Reyes disagreed that this evidence shows the existence of the text messages is a foregone conclusion, explaining "the undersigned cannot find that all of the documents sought in the Revised Subpoena could be authenticated by specified third parties who would also be the source of the same documents[.]" *Id.* The Order accordingly concluded "Charnas' act of producing documents fully responsive to the Revised Subpoena does divulge new information as to the 'existence or location, possession, or authenticity' of, at a minimum, a portion of the requested material." *Id.* (quoting *In re Grand Jury Subpoena*, 670 F.3d at 1346) (footnote call number omitted)).

The Commission filed its Appeal on November 8, 2023. ECF No. [34]. The Commission argues the Order's conclusion that the Revised Subpoena (1) seeks testimonial information and (2) fails to satisfy the foregone conclusion exception was clearly erroneous or contrary to law. *See generally* ECF No. [34]. Charnas filed a Response arguing that the Court should dismiss the

Commission's Appeal. *See generally* ECF No. [1056] ("Response"). Charnas contends the Appeal fails to identify any errors of law or fact to justify overruling the Order.

## II.  LEGAL STANDARD

The Court reviews the Magistrate Judge's rulings on matters it refers for disposition according to the "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); S.D. Fla. Magistrate Judge Rule 4(a)(1). The "clearly erroneous or contrary to law" standard of review is "extremely deferential." *Pigott v. Sanibel Dev., LLC*, No. 07-cv-0083, 2008 WL 2937804, at *5 (S.D. Ala. July 23, 2008) (quotation marks omitted). Relief is appropriate under the "clearly erroneous" prong only if the district court "finds that the Magistrate Judge abused h[er] discretion or, if after viewing the record as a whole, the Court is left with a definite and firm conviction that a mistake has been made." *Id.* (quotation marks omitted); *see also Dees v. Hyundai Motor Mfg. Ala., LLC*, 524 F. Supp. 2d 1348, 1350 (M.D. Ala. 2007) ("in the absence of a legal error, a district court may reverse only if there was an 'abuse of discretion' by the magistrate judge"). Concerning the "contrary to law" prong, "[a]n order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* (quoting *S.E.C. v. Cobalt Multifamily Investors I, Inc.*, 542 F. Supp. 2d 277, 279 (S.D.N.Y. 2008)).

## III.  DISCUSSION

"The Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a Testimonial Communication that is incriminating." *Fisher v. United States*, 425 U.S. 391, 408 (1976). "The touchstone of whether an act of production is testimonial is whether the government compels the individual to use 'the contents of his own mind' to explicitly or implicitly communicate some statement of fact." *In re Grand Jury Subpoena*, 670 F.3d at 1345 (quoting

*Curcio v. United States*, 354 U.S. 118, 128 (1957)). Even where the individual must use the contents of their own mind, an act of production is nonetheless considered non-testimonial "if the Government can show with 'reasonable particularity' that, at the time it sought to compel the act of production, it already knew of the materials, thereby making any testimonial aspect a 'foregone conclusion.'" *Id.* at 1345-46.

The Commission contends that both exceptions apply, and Judge Otazo-Reyes's contrary conclusion was clearly erroneous or contrary to law. Charnas responds that the Appeal fails to show the Order's finding that neither exception applies is clearly erroneous or contrary to law.

As an initial matter, the Court highlights that the Commission's Objections are improper because they largely reframe arguments already made and thoroughly considered by Judge Otazo-Reyes or they simply disagree with Judge Otazo-Reyes's conclusions. "It is improper for an objecting party to . . . submit [ ] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections[.]" *Marlite, Inc. v. Eckenrod*, No. 10-23641-CIV, 2012 WL 3614212, at *2 (S.D. Fla. Aug. 21, 2012) (quoting *Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)).

## A.  Non-Testimonial Exception

The Commission first argues Judge Otazo-Reyes's conclusion that the Revised Subpoena is testimonial in nature is clearly erroneous or contrary to law. The Commission raises the following specific objections to the Order: (1) finding that Charnas would use the contents of his mind to identify the device containing his text messages was clearly erroneous; (2) concluding running search terms and compiling responsive text messages also requires using the contents of

Charnas's mind was clearly erroneous or contrary to law; and (3) Judge Otazo-Reyes erred in denying the Application rather than modifying its scope. Charnas responds that the Order correctly distinguished the authorities on which the Commission relies, and the Commission otherwise fails to show that the Order is contrary to law. Charnas also argues the Order correctly found he never represented that he possesses a device containing responsive text messages, nor has he acknowledged the existence of any such messages.

### i.   Identifying the relevant device or devices

The Commission contends the Order's conclusion that requiring Charnas to identify the proper device would require him to use the contents of his mind is clearly erroneous. For support, the Commission points to Charnas counsel's prior acknowledgment that Charnas complied with the Commission's preservation requirement. *See* ECF No. [11-3] at 9-10. The Commission also emphasizes counsel's February 6, 2023 email confirming the existence of "a forensic copy of devices that could contain material responsive to this matter." ECF No. [34-4].[4] That evidence fails to show that the Order's finding Charnas would use the contents of his mind to "identify which device or devices contain the Cell Phone Messages" is clearly erroneous. ECF No. [30] at 4. As Charnas points out, his counsel's communications simply note his compliance with the Commission's preservation requirement, which includes preserving "devices that *could* contain" responsive material. ECF No. [34-4] (emphasis added). This general acknowledgement fails to demonstrate that Charnas would not need to use the contents of his mind to identify the proper device or devices. It is not an admission that Charnas in fact possesses devices containing

---

[4] The Commission notes Magistrate Judge Otazo-Reyes "was not privy" to this email and that it intends to provide the email "only for further demonstrative purposes." ECF No. [34] at 8. This record evidence cannot demonstrate that Judge Otazo-Reyes clearly erred, as this evidence was not available for Judge Otazo-Reyes to review. Regardless, the Court is unpersuaded that this email demonstrates that the Order clearly erred on this issue.

responsive text messages. The Court accordingly finds that the Order did not clearly err in concluding that Charnas would need to use his mind to identify any such devices.

> ### ii.  Running search terms and compiling responsive messages

Next, the Commission argues the Order's finding that Charnas would have to use the contents of his mind to run search terms on the relevant device or devices and compile the responsive messages is clearly erroneous or contrary to law. Charnas responds that the Order's conclusion that the Revised Subpoena requires Charnas to use the content of his mind is correct, and the Commissions' reliance on non-binding authority fails to demonstrate that the Order is contrary to law.

The Court agrees with Charnas. The Commission's reliance on non-binding decisions fail to show that the Order is contrary to law. The Commission does not dispute that Judge Otazo-Reyes applied the correct legal standard when analyzing whether the Revised Subpoena is testimonial in nature. Instead, it argues Judge Otazo-Reyes erred in distinguishing persuasive authorities in reaching her conclusion that the Revised Subpoena failed to satisfy the non-testimonial exception. The Court is unpersuaded that Judge Otazo-Reyes's analysis of the non-binding authorities on which the Commission relies was clearly erroneous or contrary to law.

The Commission primarily relies on the decision in *Sallah v. Worldwide Clearing, LLC*, 855 F. Supp.2d 1364, 1373 (S.D. Fla. 2012) to support its position that "running search terms and compiling their hits is not using the contents of one's mind." ECF No. [34] at 8. Judge Otazo-Reyes distinguished the production request at issue in *Sallah* from the Revised Subpoena, explaining:

> In *Sallah*, the court found that requests for the production of communications between a defendant and certain specified individuals or entities would not require the defendant to "employ the 'contents of [her] mind' to choose what documents might be responsive to the requests" because the defendant "need

not exercise any judgment to respond to the requests." Id. at 1373 (alterations in original). However, unlike the *Sallah* requests, the Commission's Revised Subpoena does require the exercise of Charnas' judgment to apply the "Relevant Period" constraints to the search, and to add ten preceding and twenty succeeding "Cell Phone Messages" to the initial results of the search. Moreover, nothing in *Sallah* supports the Commission's alternative suggestion that the search be conducted by Charnas' counsel or an IT vendor, which approach would still have the problems noted above. Significantly, the *Sallah* court specifically found that the documents in question could be authenticated by co-defendants, as a result of which, "the act of producing [the] responsive documents does not divulge any new information." Id. However, as discussed below, this safeguard is not available here.

ECF No. [30] at 5.

The Commission argues Judge Otazo-Reyes's application of *Sallah* to the Revised Subpoena was clearly erroneous or contrary to law. It observes that *Sallah* featured a party seeking all communications or documents between the defendants, two entities, "and their agents." *Sallah*, F.Supp.2d at 1373. The court directed the party seeking those documents to remove the phrase "and their agents"; once it did so, the court found the production request "called for objectively determinable universes of documents and do[es] not require … employ[ing] the contents of [the defendant's] mind to choose what documents might be responsive to the requests." *Id.*

The Commission contends the Revised Subpoena is analogous to the production request in *Sallah*. It argues requiring Charnas to simply provide all text messages that hit on the relevant search terms within a narrow time period, August 1, 2020 to February 28, 2021—plus ten preceding and twenty succeeding messages for each responsive message—concerns an objectively determinable set of messages that does not require Charnas to use the contents of his mind to produce. Charnas responds that Judge Otazo-Reyes correctly found he would have to exercise judgment to apply the "relevant period" constraints to the search, and that reviewing his device for responsive messages requires using ones mind to screen for "attorney-client privilege, marital privilege, and relevance[,]" among other things. ECF No. [38] at 10.

The Commission fails to show that Judge Otazo-Reyes's application of *Sallah* is clearly erroneous or contrary to law. Unlike the production request in *Sallah*, the Revised Subpoena requires Charnas to use the contents of his mind to determine if a potentially responsive message is within the relevant time period, and to then add preceding and twenty succeeding messages for each responsive message. Even if adding the preceding and succeeding messages can be considered a robotic exercise, at minimum, the mental act of determining whether the message in question is within the relevant time period is not. Judge Otazo-Reyes reasonably distinguished *Sallah* on this basis, and in light of the fact that the messages cannot be authenticated by co-defendants as in *Sallah*. The Commission's observation that the Revised Subpoena features a narrower time period than the initial subpoena, and that the production request in *Sallah* featured no temporal limitation, fails to show the Order's application of *Sallah* is clearly erroneous or contrary to law.[5]

The Commission's contention that the Order erroneously distinguishes *Ronin Cap., LLC v. Mayorga*, No. CV 6909, 2016 WL 7394051 (N.D. Ill. Dec. 21, 2016) and *SEC v. Karroum*, No. 15-590 (JEB/DAR), 2015 WL 8483246 (D.D.C. 2015) fares no better. In *Ronin Cap. LLC*, the plaintiff "forensically imaged [the] defendants' electronic devices but was unable to access their personal email accounts … because of additional security features." 2016 WL 7394051, at *2. The defendants voluntarily produced two responsive emails and contended that producing additional documents "would violate their Fifth Amendment privilege against self incrimination." *Id.* The

---

[5] The same is true regarding the Commission's reliance on Judge Otazo-Reyes's statement during the Initial Show Cause Hearing that narrowing the subpoena "would take away any thinking[]" and that Charnas "could write a little computer program" to produce the responsive messages. *See* ECF No. [34-1] at 37:3-18. Upon review of the Revised Subpoena, Judge Otazo-Reyes concluded that it still requires Charnas to use the contents of his mind to comply with its terms. The Commission fails to show this conclusion is clearly erroneous or contrary to law merely because Judge Otazo-Reyes intimated narrowing the subpoena would render it non-testimonial before reviewing the Revised Subpoena itself.

court found requiring the defendants to respond to the plaintiff's production request "would act as testimony that [the documents] exist, were in their possession or control and were authentic." *Id.* at *4 (quoting *U.S. v. Hubbell*, 530 U.S. 27, 37 (2000)). The court suggested the plaintiff could amend its request to avoid a testimonial "culling process" of responsive documents and ordered the parties "to meet and confer to develop a list of search terms that [we]re reasonably calculated to uncover whether defendants' emails contain[ed] additional relevant documents." *Id.*, at *5. In *Karroum*, the defendant also produced some responsive emails but "did not relinquish email communications with investors— as required by the [SEC's] subpoena." 2015 WL 8483246, at *1. The court ordered the defendant to "consent to having his Internet Service Provider (ISP) turn over his emails to the SEC." *Id.*, at *2. The court observed that the defendant had partially responded to the Commission's subpoena and accordingly found that "when the individual has acknowledged the existence of the documents already – and knowledge of those documents exists independent of him – his production of such documents is not testimonial in nature." *Id.*, at *3.

Judge Otazo-Reyes distinguished *Ronin Cap., LLC*, explaining the court's "suggestion that search terms be used to avoid violating *Hubbell* in that case does not provide an unqualified endorsement of the Commission's request to compel Charnas to produce documents based on its own proposed search terms, which, as discussed above, would require Charnas to use the contents of his mind." ECF No. [30] at 6. The Commission contends this is "entirely circular" and discounts *Ronin Cap., LLC's* observation that formulating narrow search terms to uncover responsive documents renders their production non-testimonial. The Court disagrees. Judge Otazo-Reyes accurately observed that *Ronin Cap., LLC* endorsed the use of search terms to remedy the

defendant's inadequate production.[6] The court did not suggest that supplying search terms categorically remedies an act of production that is otherwise testimonial in nature. Moreover, the Order's prior finding that the Commission's proposed search terms would not eliminate other testimonial aspects of responding to the Revised Subpoena—at minimum, identifying the proper device, and identifying whether any responsive messages are within the relevant time period— provides a reasonable basis for distinguishing *Ronin Cap., LLC*. The Commission's reliance on this out-of-circuit decision therefore fails to show that the Order is clearly erroneous or contrary to law.[7]

The same is true regarding Judge Otazo-Reyes's analysis of *SEC v. Karroum*, No. 15-590 (JEB/DAR), 2015 WL 8483246 (D.D.C. 2015). The Order accurately observes that, unlike here, the defendant in *Karroum* both acknowledged the existence of the messages in question and that those messages can be verified by third parties. ECF No. [30] at 5-6; *see Karroum*, 2015 WL 8483246, at *3. The Commission does not dispute this conclusion. Instead, it contends this analysis is "misplaced" because whether the Commission is aware of the messages is distinct from whether producing those messages is testimonial in nature, and because Charnas purportedly acknowledged

---

[6] The Order further observes that the parties in *Ronin Cap. LLC* were directed to confer and formulate proposed search terms, whereas here, Charnas has refused to participate in formulating any search terms. The Commission notes it unilaterally provided search terms because "at no time was Charnas's counsel willing to engage in such a discussion." Objection at 10 n.6. However, the Order found "no basis to compel Charnas or his counsel" to participate in an such conferral process, a finding the Commission does not dispute. Order at 5 n.4. The Commission's observation that Charnas refused to participate in developing search terms thus provides no basis for finding the Order is clearly erroneous or contrary to law.

[7] The Commission also relies on the finding in *Duncan v. Barton's Discounts, LLC*, 178 N.E. 3d 810, 818 (Ind. Ct. of App. 2021) that the plaintiff's text messages "ha[ve] become a foregone conclusion[]" and are non-testimonial "because either the documents fall within the specified timeline and parameters of the discovery request or they do not—no independent judgment is required to make that determination." The Court is unpersuaded that this additional authority suggests the Order is clearly erroneous or contrary to law. The sole case on *Duncan* relies on for support is *Sallah*, which the Order reasonably distinguishes for the reasons discussed above. Furthermore, the Order did not find the information contained in Charnas's text messages is a foregone conclusion, unlike *Duncan*.

his possession of the messages. As discussed above, the Order's finding that Charnas has not acknowledged the existence of responsive text messages is not clearly erroneous. The Commission effectively argues the Order's observation that *Karroum* is plainly *distinguishable* from the instant action is clearly erroneous or contrary to law. The Court disagrees.

### iii.     Further modifying the Revised Subpoena

The Commission also argues Judge Otazo-Reyes erred by denying the Application rather than further modifying the Revised Subpoena. The Commission does not articulate how Judge Otazo-Reyes's failure to do so was clearly erroneous or contrary to law, however.[8] Instead, it simply notes it "disagree[s]" with Judge Otazo-Reyes's finding that the parties' reliance on *In re Generic Pharms. Pricing Antitrust Litig.*, No. MDL 2724; 16-MD-2724, 2020 WL 5558756 (E.D. Pa. Sept. 1, 2020) was not "instructive for the task at hand." ECF No. [30] at 8 n.8. The Order explains *In Re Generic Pharms. Pricing Antitrust Litig.* "found that subpoenas seeking communications, calendars, and marketing, sale, production and pricing information did not fit either exception to the act of production doctrine but did not discount the potential viability of a more narrowly tailored subpoena." *Id.* (citing *In re Generic Pharms. Pricing Antitrust Litig.*, at *1-2). Judge Otazo-Reyes found no basis to permit the Commission to further revise the Revised Subpoena "[g]iven those different and inconclusive circumstances[.]" *Id.* at 8 n.8. The Commission's disagreement with this finding fails to show that it is clearly erroneous or contrary to law.

---

[8] The Commission's observation that this Court previously recognized Federal Rule of Civil Procedure 72(a) allows for modification in *Ramos v. U.S. Dep't of Agric.*, No. 22-CV-20312, 2022 WL 17367335 (S.D. Fla. Dec. 2, 2022), in no way demonstrates that Judge Otazo-Reyes's failure to fashion a modification here was clearly erroneous or contrary to law. Moreover, the Appeal does not propose any such modification.

The Court concludes that the Order's conclusion that the Revised Subpoena requests information that is testimonial in nature is not clearly erroneous or contrary to law.

## B. Foregone Conclusion Exception

The Commission also contends that Judge Otazo-Reyes's conclusion that the information requested by the Revised Subpoena failed to satisfy the "foregone conclusion" test was clearly erroneous or contrary to law. Charnas responds that the Order's analysis of the foregone conclusion exception is well-reasoned and correct, and the Commission fails to show otherwise. As noted above,

> under the "foregone conclusion" doctrine, an act of production is not testimonial—even if the act conveys a fact regarding the existence or location, possession, or authenticity of the subpoenaed materials—if the Government can show with "reasonable particularity" that, at the time it sought to compel the act of production, it already knew of the materials, thereby making any testimonial aspect a "foregone conclusion."

*In re Grand Jury Subpoena*, 670 F.3d at 1345-46. The Order rejected the Commission's argument that Charnas's responsive text messages satisfy this exception, concluding:

> unlike the <u>Sallah</u> court, the undersigned cannot find that all of the documents sought in the Revised Subpoena could be authenticated by specified third parties who would also be the source of the same documents; hence, Charnas' act of producing documents fully responsive to the Revised Subpoena does divulge new information as to the "existence or location, possession, or authenticity" of, at a minimum, a portion of the requested material.

ECF No. [30] at 7 (quoting *In re Grand Jury Subpoena*, 670 F.3d at 1346).

The Commission first argues Judge Otazo-Reyes clearly erred by "fail[ing] to take into account Charnas's AT&T toll records, messages provided by other known Traders Charnas was messaging with about ODP, and Charnas's own concessions and admissions that he had responsive messages on his cell phone and had preserved them." ECF No. [34] at 16. However, the Order explicitly discusses this evidence. Judge Otazo-Reyes observed that the Application included "two

redacted text messages between Charnas and unidentified individuals that mentioned Office Depot," in addition to a portion of "Trader 6's" deposition testimony providing that Charnas "was reviewing all communications that he had that [] were in his availability on his cell phone or email or whatever." ECF No. [30] at 6-7. The Order notes the Commission was ordered to provide all supporting evidence for *in camera* review at the Initial Show Cause Hearing, and that the Commission stated it had toll records and additional text messages supporting the foregone conclusion exception at the Continued Show Cause Hearing. *Id.* at 7. The Order also points out "the Commission also acknowledged that the text messages already in its possession covered only some but not all of the individuals and subject matters listed in the search terms of the Revised Subpoena." *Id.*

Here, the Commission emphasizes the evidence it provided in support of the foregone conclusion exception. The Objection notes "the Commission has identified at least six individuals who engaged in communications with Charnas that are relevant to this investigation." ECF No. [34] at 13. The text messages provided by the Commission indicate Charnas discussed ODP and met with some of those individuals. *See* ECF No. [1-2] at 49-53. Coupled with trading records, those messages suggest those discussions coincided with Charnas and some of those individuals executing "suspiciously timed ODP purchases." ECF No. [34] at 14. The Commission also points to additional text messages and Charnas's AT&T phone records.[9] *See generally* ECF No. [34-3]. Those show that Charnas exchanged numerous messages with most of the unidentified individuals during the relevant period. Some of those messages include responsive terms. Finally, the

---

[9] The Appeal notes Judge Otazo-Reyes requested and reviewed additional text messages between Charnas and those unidentified traders. ECF No. [15] at 15 n.8. The Commission's summary of those messages reflect a significant volume of text messages sent between Charnas and most of the unidentified traders during the relevant period. *See* ECF No. [34] at 15.

Commission points to the deposition testimony of "Trader 6" and Charnas and his counsel's acknowledgement that he uses his cell phone and preserved the contents of his cell phone. Relevant here, "Trader 6" testified that Charnas "acknowledged that he was reviewing all communications that he had that [sic] were in his availability on his cell phone or email or whatever[.]" ECF No .[1-2] at 57.

    None of this evidence demonstrates the Order's conclusion that requiring Charnas to respond to the Revised Subpoena would "divulge new information as to the 'existence or location, possession, or authenticity' of, at a minimum, a portion of the requested material[]" is clearly erroneous. The text messages, AT&T toll records, and related trading activity show that Charnas communicated with most of the unidentified traders during the relevant period, and at least some of those communications are responsive to the Revised Subpoena. As detailed above, however, the Order notes those messages "covered only some but not all of the individuals and subject matters listed in the search terms of the Revised Subpoena." ECF No. [30] at 7. That finding is consistent with the evidence on which the Commission relies in its Appeal.[10] Tellingly, the Commission does not dispute that the messages in its possession cover some, but not all, of the unidentified individuals and responsive terms encompassed by the Revised Subpoena. The additional text messages and AT&T toll records reflect a high volume of text messages and phone calls between Charnas and those individuals during the relevant period, but not that those communications invariably concerned ODP or are otherwise responsive to the Revised Subpoena. That evidence supports the *inference* that additional responsive text messages exist between Charnas and those individuals, and that those messages may be in Charnas's possession. However,

---

[10] The Court's review of the Commission's *in camera* submissions confirms the text messages feature some, but not all, of the unidentified traders and responsive terms included in the Revised Subpoena.

it does not demonstrate either the existence or Charnas's actual possession of any such messages, or that Judge Otazo-Reyes clearly erred in concluding otherwise.

Moreover, the Commission's reliance on "Trader 6's" deposition testimony as well as statements from Charnas and his counsel is unpersuasive. As Judge Otazo-Reyes observed, "Trader 6" testifying that Charnas was reviewing all communications "'in his availability on his cell phone or email or whatever' is not equivalent to the defendant's sufficient acknowledgement of the existence of the requested documents through partial production in *Karroum*, 2015 WL 8483246 at *3." ECF No. [30] at 7 n.7. And as discussed, Charnas's counsel acknowledging compliance with the Commission's preservation requirement does not establish that Charnas in fact possesses responsive messages, or that those messages even exist. The same is true regarding Charnas's acknowledgement that he "uses his cell phone and sends and receives Cell Phone messages." ECF No. [27] at 3. As Charnas contends in his Response—and argued at the time— this "shows nothing more than he lives in the 21st century." *Id.* In sum, the Commission demonstrates that Charnas exchanged text messages with all six unidentified individuals during the relevant period, and that some of those communications are responsive to the Revised Subpoena. This evidence nonetheless fails to show that all or even the majority of the messages sought in the Revised Subpoena can be authenticated or provided by those individuals. Judge Otazo-Reyes's conclusion that the evidence fails to support such a finding is therefore not clearly erroneous.

The Commission relies on several cases to support its position that the Order's foregone conclusion analysis is clearly erroneous. The Court is unpersuaded that any of those cases support finding that the Order committed clear error. The Commission first argues Judge Otazo-Reyes erred in failing to acknowledge the Revised Subpoena is "diametrically opposed" to the Supreme

Court's decision in *United States v. Hubbell*, 530 U.S. 27 (1976), and is instead "far more akin" to the subpoena in *Fisher v. United States*, 425 U.S. 391 (1976).

The Commission notes that the subpoena at issue in *Hubbell* requested the production of eleven broad categories of documents, whereas here, the Revised Subpoena requests text messages from a defined period that are responsive to specific terms. The Supreme Court concluded in *Hubbell* that "there was testimony in the production of the documents since the Government had no knowledge of the existence of documents, other than a suspicion that documents likely existed and, if they did exist, that they would fall within the broad categories requested." *In re Grand Jury Subpoena*, 1345 (citing *Hubbell*, 530 U.S. at 44-45). The Supreme Court distinguished its holding from its contrary holding in *Fisher* that the subpoena at issue was non-testimonial in nature, explaining:

> Whatever the scope of this "foregone conclusion" rationale, the facts of this case plainly fall outside of it. While in *Fisher* the Government already knew that the documents were in the attorneys' possession and could independently confirm their existence and authenticity through the accountants who created them, here the Government has not shown that it had any prior knowledge of either the existence or the whereabouts of the 13,120 pages of documents ultimately produced by respondent. The Government cannot cure this deficiency through the overbroad argument that a businessman such as respondent will always possess general business and tax records that fall within the broad categories described in this subpoena.

*Hubbell*, 530 U.S. at 44-45. The Commission contends that, as in *Fisher*, the text messages can be authenticated separately "both through the production of other Traders and through AT&T's toll records." ECF No. [34] at 19. It further relies on *United States v. Fridman*, 974 F.3d 163 (2d Cir. 2020) for the proposition that a subpoena can be "'implicitly authenticated' if the Government establishes that those documents are in fact what they purport to be and the [subpoena recipient] was not forced to use his discretion in selecting the responsive documents." *Id.* at 175 (quoting *United States v. Greenfield*, 831 F.3d 106, 118 (2d Cir. 2016)).

The Order's foregone conclusion analysis is not clearly erroneous or contrary to law for failing to discuss those authorities. The Commission's assertion that the Revised Subpoena is diametrically opposed to *Hubbell* is inapposite. As discussed, while the Commission provides evidence supporting the existence of additional responsive text messages, this evidence amounts to a suspicion that those messages exist and are in Charnas's possession. Moreover, the Commission has not demonstrated that those messages can be independently authenticated by either those six unidentified individuals or through the AT&T toll records themselves. *Fisher* is thus plainly distinguishable, as the Government had established the defendants' accountants "could independently confirm the[] existence [of the documents] and [their] authenticity through the accountants who created them[.]" *Hubbell*, 530 U.S. at 44-45; *see Fisher*, 425 U.S. at 409-14. Here, the Commission has shown other individuals exist who *could* potentially confirm the existence and authenticity of Charnas's text messages, but not that they can actually do so. The Commission's reliance on *Fridman* is accordingly also misplaced, as the Commission has not established that those messages are "in fact what they purport to be"—responsive text messages between Charnas and the six unidentified individuals during the relevant period. 974 F.3d at 175. Judge Otazo-Reyes therefore did not clearly err by failing to apply those decisions to the foregone conclusion analysis.

The Commission next takes issue with two decisions the Order *did* apply to the foregone conclusion analysis, namely, *In re Grand Jury Subpoena Duces Tecum Dated March 25, 2011*, 670 F.3d 1335 (11th Cir. 2012) and *SEC v. Complete Bus. Sols. Grp., Inc.*, No. 20-CIV-81205, 2022 WL 1288749 (S.D. Fla. Apr. 29, 2022). The Eleventh Circuit held the subpoena at issue in *In re Grand Jury Subpoena* failed to satisfy the foregone conclusion exception, explaining:

> To be fair, the Government has shown that the combined storage space of the drives could contain the files that number well into the millions. And the Government has

> also shown that the drives are encrypted. The Government has not shown, however,
> that the drives actually contain any files, nor has it shown which of the estimated
> twenty million files the drives are capable of holding may prove useful.

*In re Grand Jury Subpoena*, 670 F.3d at 1347 (emphasis in original). The Commission contends

the Revised Subpoena presents the opposite situation, and that the Order clearly erred for failing

to recognize this. Charnas responds that the Revised Subpoena is identical to the subpoena in *In*

*re Grand Jury Subpoena*, and that the Order correctly recognized it as such.

As discussed, the Order found that the responsive text messages at issue cannot be

authenticated by third parties, and that requiring Charnas to respond to the Revised Subpoena

would in turn "divulge new information as to the 'existence or location, possession, or authenticity'

of, at a minimum, a portion of the requested material." ECF No. [30] at 7 (quoting *In re Grand*

*Jury Subpoena*, 670 F.3d at 1346). As in *In re Grand Jury Subpoena*, the Commission has not

shown that Charnas possesses responsive messages. The responsive messages the Commission

does provide supports the *inference* that Charnas in fact possesses responsive messages.

Furthermore, the Commission has not shown the majority of the phone calls and text messages

between Charnas and the unidentified individuals during the relevant period are responsive. The

Order does not suggest the Commission is "required to have actual knowledge of the existence and

location of each and every responsive documents[,]" *Greenfield*, 831 F.3d at 118. Instead, the

Order noted the Commission's inability to independently verify the existence or authenticity of

the responsive text messages in question. Judge Otazo-Reyes accordingly concluded that requiring

Charnas to respond to the Revised Subpoena would necessarily involve revealing the existence,

location, possession, or authenticity of at least some of those messages. The Court finds this

application of *In re Grand Jury* is neither clearly erroneous nor contrary to law. The decisions on which the Commission relies fail to show otherwise.[11]

Finally, the Commission's contention that the Order's analysis of *SEC v. Complete Bus. Sols. Grp., Inc.*, No. 20-CIV-81205, 2022 WL 1288749 (S.D. Fla. Apr. 29, 2022) fails to support its conclusion is unpersuasive. As Judge Otazo-Reyes explained, the court in *Complete Business Solutions Group, Inc.* "overruled a defendant's objection that, due to the passage of time, his prior disclosures could not be used to show with reasonable particularity the existence of the documents sought in a request for production." ECF No. [30] at 8 (citing *Complete Bus. Sols. Grp., Inc.*, 2022 WL 1288749, at *2). The court observed an asset freeze rendered any change in the subsequent ten months "*quite limited*." *Complete Bus. Sols. Grp., Inc.*, 2022 WL 1288749, at *2 (emphasis in original). The Order distinguished *Complete Business Solutions Group* on the basis that "there has been no prior disclosure on the part of Charnas upon which the Commission can rely to meet the reasonable particularity requirement." ECF No. [30] at 8.

The Commission contends this constitutes clear error for failing to "acknowledge[] there was a preservation requirement issued" or that Charnas never "assert[ed] he does *not* possess the messages the Commission seeks." ECF No. [34] at 18 (emphasis in original). As discussed, Charnas's counsel's acknowledgment of compliance with the preservation requirement is not a prior discourse or an acknowledgement that Charnas possesses responsive text messages. Moreover, as Charnas accurately observes, at no point did he concede that he possesses such

---

[11] The Commission also relies on *Art Remedy LLC v. Lana Moes Art, LLC*, No. 18-CV-061912-MORENO/STRAUSS, 2020 WL 4350728 for its observation that "[w]hether a description reasonably particular depends on whether it places one on reasonable notice of what is called for and what is not." *Id.*, at *2. *Art Remedy LLC* concerned a defendant's motion to quash a "Notice to Appear under § 56.29(2) of the Florida Statutes[]" for failing "to describe the property at issue with reasonable particularity." *Id.*, at *1. The decision did not contend with the Fifth Amendment or the foregone conclusion exception. *Art Remedy LLC* thus provides no support for finding the Order's foregone conclusion analysis is clearly erroneous.

messages. The Commission's suggestion that Charnas's failure to explicitly assert he does *not* possess any responsive text messages can effectively serve as a prior disclosure is unavailing. The Court concludes that the Order's application of *Complete Business Solutions Group* was not clearly erroneous or contrary to law.

The Commission has accordingly failed to meet its burden to demonstrate the Order's conclusion that the foregone conclusion exception does not apply to the Revised Subpoena is clearly erroneous or contrary to law.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Commission's Appeal, **ECF No. [34]**, is **DISMISSED**, and Judge Otazo-Reyes's Order, **ECF No. [30]**, is **AFFIRMED**.

2. The Court Clerk is directed to **CLOSE** this case.

3. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 15, 2024.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record